THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOSEPH GRIFFITH, Defendant-Appellant.

Second District   No. 2—86—0218

Opinion filed March 31, 1987.

Donald J. Mock, of Itasca, for appellant.

James E. Ryan, State's Attorney, of Wheaton (Robert J. Biderman and David E. Mannchen, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

The defendant, Joseph C. Griffith (Griffith), appeals from the judgment of the circuit court which continued the statutory summary suspension of defendant's driving privileges pursuant to section 11—501.1 of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.1). On appeal, Griffith sets forth several contentions which, he claims, require reversal of the trial court's judgment. For the reasons set forth below, we affirm the judgment of the circuit court.

On January 18, 1986, Griffith was charged with driving under the influence of alcohol (DUI) in violation of section 11—501 of the Code (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501). On that date, he was given written notice of the summary suspension of his driving privileges pursuant to section 11—501.1 of the Code. Griffith was advised by a confirmation letter dated January 28, 1986, that he had the right to request a judicial hearing on the summary suspension by filing a petition with the circuit court clerk. The letter stated that the State would be ready for this hearing on the arraignment date which was set for February 18, 1986.

On February 18, 1986, Griffith filed a petition for a hearing pursuant to section 2—118.1 of the Code (Ill. Rev. Stat. 1985, ch. 95½, par. 2—118.1). The petition acknowledged that Griffith refused to submit to a breathalyzer test. It sought the court to determine whether (1) he had been lawfully placed under arrest for an offense as defined in section 11—501; (2) the arresting officer had reasonable grounds to believe that he was driving a motor vehicle while under the influence of alcohol; and (3) he had been advised by the arresting officer that his privilege to operate a motor vehicle would be suspended if he

refused to submit and complete the breathalyzer test.

At the hearing, Griffith's counsel informed the court that he was unprepared to go forward with the case. Witnesses were unavailable at that time, and he had been hired only one week prior to that date. The assistant State's Attorney advised the court that the arresting officer was present and that pursuant to administrative order No. 85—46, summary suspension hearings should not be continued. The trial court ordered the suspension hearing to begin that afternoon and to be continued to March 4, 1986, so that Griffith could present his witnesses.

At the hearing, Griffith testified that on January 18, 1986, he was stopped by a police officer while he was stopped at the red light at St. Charles Road and Route 83. The officer asked him if he knew that his license plates had expired. He responded by producing a receipt demonstrating that a renewal had been applied for. The officer then questioned whether he knew that one of his headlights was brighter than the other. After responding affirmatively, he was asked if he had been drinking that night. He acknowledged that he had had some drinks earlier. The officer then asked him to exit his vehicle, whereupon he questioned whether the officer intended for him to leave the vehicle in the middle of the street at the stoplight. The officer instructed him to drive the vehicle across the street to the State Police weigh-in station. At the weigh-in station, the officer asked him to perform two field sobriety tests. Griffith recalled that after approximately six steps into the toe-to-heel test, the officer informed him he was doing it wrong and instructed him again on the procedure. After four more steps, he was informed that he had failed the test. Then, the officer requested that he balance on one leg. After balancing for approximately three seconds, he was informed that he was wobbling. He explained to the court that the reason he wobbled was because he had rheumatoid arthritis in his knees following knee surgery in 1979 and because the small shoes that he was wearing did not provide him any support on the gravel area in which they were standing. The police officer then informed Griffith that he would be cited for DUI. They went to the Villa Park police department where the officer issued a ticket for misuse of lanes and DUI. When the police officer asked Griffith if he would take the breathalyzer test, he responded that he would not. Finally, defendant testified that he felt that at the time he was not legally intoxicated, he was driving in a safe manner, not violating any traffic laws, and that he had performed the toe-to-heel test as well as the police officer.

The State moved for a directed finding claiming that the defend-

ant had not sustained his burden of proof. The trial court denied this request.

Next, Officer Raymond Fisher testified. He stated that on January 18, 1986, at approximately 12:10 a.m., he saw a car with expired license plates. He followed this car for two blocks while he "ran the plates." During this time, the car was weaving across the yellow centerline. He stopped the car and spoke to the driver, whom he identified as Griffith. He observed a strong odor of alcohol on Griffith's breath. Griffith's speech was slurred and he mumbled. He asked Griffith to perform two sobriety tests. In the toe-to-heel test, he acknowledged that Griffith performed the test in the correct manner after a second attempt, but that he was still staggering, falling and swaying off the line while walking. In the one-leg stand, Griffith held his foot off the ground for only about three seconds before he began to fall down. The officer testified that he did not think that Griffith was fit to drive. He placed him under arrest and took him to the police station, where he refused to take the breathalyzer test after being informed of the consequences of refusal.

At the conclusion of the hearing, the trial court found that Griffith had been placed under arrest for an offense as defined in section 11—501, that the arresting officer had reasonable grounds to believe that Griffith was driving a motor vehicle while under the influence of alcohol, and that he had been advised by Officer Fisher that the privilege to operate the motor vehicle would be suspended if he refused to submit to and complete the breathalyzer test. The court set the cause over until March 4 for a hearing on defendant's petition for a judicial driving permit.

At that hearing, Griffith's counsel argued that the burden of proof was on the State to demonstrate that the arresting officer had reasonable grounds to believe that defendant was driving under the influence of alcohol. After a discussion of various cases and statutory provisions, the trial court adhered to its earlier ruling that the burden was on the defendant to show that the State erred.

Griffith then presented four witnesses who had been dining with Griffith from 6 p.m. until one-half hour before he was arrested. On direct examination, their testimony was that Griffith did not have a heavy odor of alcohol about him, was not slurring his words, did not stagger, and, in their opinions, was not under the influence of alcohol. Upon cross-examination, all admitted that they had been drinking on the night of the incident, that they were friends of Griffith, they were not present when he was stopped, and that they had no knowledge of how Griffith was driving or behaving at the time of the arrest.

After summarizing the case, the trial court ordered that the summary suspension not be rescinded. Griffith, thereafter, petitioned the trial court for a judicial driving permit which the trial court granted.

On March 6, 1986, defendant timely appealed the March 4, 1986, order, refusing to grant defendant's petition to rescind the summary suspension of his driver's license.

On appeal, defendant contends that: (1) the trial court erred in refusing his request for a hearing date other than the arraignment date; (2) the trial court erred in placing the burden of proof on the defendant in the suspension hearing; (3) the trial court failed to properly consider the evidence of four witnesses; and (4) the mandatory summary suspension of his driver's license unconstitutionally deprives him of a property interest.

■ Defendant first contends that the trial court erred in refusing defendant's request for a hearing date other than the arraignment date. Defendant's counsel claims that he was hired only one week prior to appearing that day in court, was unprepared, and that witnesses were unavailable at the time.

In fact, there is no merit to defendant's contention. The record indicates that the State notified defendant in a letter dated January 28, 1986, that he had a right to request a judicial hearing by filing a petition with the circuit court clerk. This letter advised defendant that his arraignment date would be on February 18, 1986, and that the State would be ready for a hearing on that date. When the defendant appeared, the trial court initially expressed a reluctance to continue the summary suspension hearings, but after discussion, explained that it would begin the hearing on that date, and if the defendant wished to bring in witnesses at a later date, he could do so. Thereafter, defendant and the arresting officer were examined. Two weeks later, at the next hearing, defendant offered the testimony of his four witnesses.

Section 2—118.1(b) of the Code states that the judicial hearing shall be conducted by the circuit court having jurisdiction "[w]ithin 30 days after receipt of the written request or the first appearance date of the Uniform Traffic Ticket issued pursuant to a violation of Section 11—501." (Ill. Rev. Stat. 1985, ch. 95½, par. 2—118.1(b).) Thus, the trial court's decision to hold the rescission hearing on the afternoon of the same day that defendant filed his petition is not contrary to the statute. Furthermore, in effect, the trial court did allow the defendant the later opportunity to be heard on March 4. Defendant was able to call and examine all four witnesses who were with him on the night of the arrest. In any event, it also appears from the record that defendant's counsel was well prepared at trial. We therefore find no abuse of

discretion in the trial court's decision to hear the cause on February 18.

■ Next, defendant contends that the trial court erred by placing the burden of proof on the defendant in the suspension hearing. This very issue was recently addressed in *People v. Blythe* (1987), 153 Ill. App. 3d 292. After examining the case law and statutory language, the court concluded that "the burden [of proof] is placed upon a petitioner when driving privileges are sought due to revocation or suspension." (153 Ill. App. 3d 292, 298.) In the instant case, the defendant has raised no argument which would undermine the analysis of the *Blythe* court. Therefore, we conclude that the trial court's allocation of the burden of proof was proper. *Cf. Sutton v. Edgar* (1986), 147 Ill. App. 3d 723, 729-30 (similarly construing section 2–118 of the Code).

■ ■ Defendant next argues that the trial court failed to properly consider the evidence of his four witnesses. Defendant repeats the testimony elicited by the four witnesses and challenges the experience and credibility of the arresting police officer. Defendant also concludes that the trial court's decision was improperly based on the subjective judgment of the arresting officer.

Whether the defendant has met his burden is a question of fact to be determined by the trial judge. The findings of the trier of fact in this regard will not be overturned on appeal unless such findings are palpably against the manifest weight of the evidence. (*People v. Jacquith* (1984), 129 Ill. App. 3d 107, 117.) In the instant case, the testimony of the arresting officer was that the defendant was weaving his car across the yellow centerline, had a strong odor of alcohol, slurred his speech, and failed to perform two sobriety tests. The testimony of the four witnesses produced by defendant was that they had been with him all night, did not observe a heavy odor of alcohol about him, and did not observe him slurring his words or staggering in his gait. It is the province of the trial court, when sitting without a jury, to resolve disputed questions of fact and to determine the credibility of witnesses and the weight to be given their testimony. (*Gibson v. State Farm Mutual Automobile Insurance Co.* (1984), 125 Ill. App. 3d 142, 150.) In view of the facts here, the trial court chose to disbelieve defendant's witnesses and believe the testimony of the arresting officer. Thus, the defendant did not satisfy his burden of proving by a preponderance of the evidence under section 2–118.1 that the arresting officer did not have reasonable grounds to believe that defendant was under the influence of alcohol, that he had not been lawfully placed under arrest for an offense as defined in section 11–501, and that he had not been advised by the arresting officer that his privilege

to operate the motor vehicle would be suspended if he refused to submit and complete the breathalyzer test.

■ Finally, defendant contends that the statutory summary suspension provisions of the Code are unconstitutional because they allow his license to be automatically suspended prior to any hearing (Ill. Rev. Stat. 1985, ch. 95½, pars. 2—118.1, 11—501.1) and because they provide that no judicial driving permit may become effective until 30 days after the date of the suspension (Ill. Rev. Stat. 1985, ch. 95½, par. 6—206.1).

The defendant's contention that sections 2—118.1 and 11—501.1 are unconstitutional is based upon his assertion that a driver's license is a constitutionally protected property interest. This assertion has previously been addressed by our court. While continued use and possession of a driver's license is a substantial interest, it is not a fundamental right, since it is not explicitly or implicitly guaranteed by the constitution. (*People v. Mourillon* (1984), 124 Ill. App. 3d 218, 221; see also *Mackey v. Montrym* (1979), 443 U.S. 1, 61 L. Ed. 2d 321, 99 S. Ct. 2612; *Dixon v. Love* (1977), 431 U.S. 105, 52 L. Ed. 2d 172, 97 S. Ct. 1723.) Therefore, the statute must be upheld since it bears a rational relationship to the permissible State interest in public safety and in suspending the driving privileges of persons who are arrested for drunken driving and refuse to submit to a breathalyzer test. See *People v. Mourillon* (1984), 124 Ill. App. 3d 218.

Concerning the defendant's contention that these sections are unconstitutional because they allow his license to be revoked without a hearing, we note that the statute expressly provides that a defendant may seek to have the statutory summary suspension rescinded by filing a motion in the trial court upon being notified of the suspension. (Ill. Rev. Stat. 1985, ch. 95½, par. 2—118.1(b).) In the instant case, defendant was afforded a full hearing at which the court found that the statutory requirements for summary suspension had been met. Therefore, there was no deprivation of any rights without a hearing. Furthermore, for the reasons stated in *Mackey v. Montrym* (1979), 443 U.S. 1, 61 L. Ed. 2d 321, 99 S. Ct. 2612, there is no constitutional requirement of a presuspension hearing where a defendant's driver's license is sought to be suspended or revoked. See also *Dixon v. Love* (1977), 431 U.S. 105, 52 L. Ed. 2d 172, 97 S. Ct. 1723; *People ex rel. Eppinga v. Edgar* (1986), 112 Ill. 2d 101.

Defendant's contention that section 6—201.1 is unconstitutional fails for the same reasons. Defendant's specific argument is that the impact of limiting the judicial driving permit's effective date until 30 days after the suspension is too harsh and is irrelevant to the State's

interests. We disagree. It is well settled that the State has a strong interest in highway safety. (*People ex rel. Eppinga v. Edgar* (1986), 112 Ill. 2d 101, 110.) The purpose of the implied-consent statute is to assist in the determination of whether motor vehicle drivers suspected of intoxication are in fact under the influence of alcohol and to make the streets and highways of this State safer for its citizens by making prosecution of intoxicated drivers easier and by suspension of driver's licenses upon refusal to submit to an intoxication test. (*People v. Doherty* (1986), 144 Ill. App. 3d 400, 403.) Section 6—206.1 of the Code recognizes that "in some cases the granting of limited driving privileges, within the bounds of public safety, is warranted during this period of driver's license suspension." (Ill. Rev. Stat. 1985, ch. 95½, par. 6—206.1.) Delaying the effective date of the judicial driving permit 30 days allows the State to retain the deterrent effect of the statute which could otherwise be circumvented by any defendant's obtaining a judicial driving permit on the day that the suspension of his regular driver's license became effective.

For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

DUNN and REINHARD, JJ., concur.