(No. 64931.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JERRY ORTH, Appellee.

*Opinion filed September 29, 1988.*

Neil F. Hartigan, Attorney General, of Springfield, and Stephen Reed, State's Attorney, of Oquawka (Shawn W. Denney, Solicitor General, and Terence M. Madsen and Brett D. Heinrich, Assistant Attorneys General, of Chicago, and Kenneth R. Boyle, John X. Breslin and Gary F. Gnidovec, of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.

Stephen Landuyt, of Monmouth, for appellee.

JUSTICE CLARK delivered the opinion of the court:

The principal question posed in this appeal is whether a driver who suffers the summary suspension of his li-

cense has the burden of proving that the suspension should be rescinded. The answer to this question is yes.

In the circuit court of Henderson County, the defendant filed a written request, which he styled a "petition," to rescind the summary suspension of his driver's license. After a hearing, the circuit court granted the defendant's request. The State appealed, and the appellate court affirmed (154 Ill. App. 3d 144). We granted the State's petition for leave to appeal. 107 Ill. 2d R. 315.

The facts which were presented at the hearing on defendant's request are as follows. At approximately 1:30 a.m. on January 12, 1986, Police Chief Ron Myers was on duty, patrolling Dallas City. While driving his car south on Oak Street, a two-way street, Myers noticed a southbound white and tan Oldsmobile ahead of him. Earlier that evening he had seen the same car parked in front of the Circle C and Riverfront Taverns. While both vehicles continued to travel south, Myers saw the car he was following stray over the Oak Street centerline after crossing a set of railroad tracks. It remained over the centerline until it reached an intersection. Just before reaching the intersection, its right rear taillight went out. The taillight went back on again as the car turned right onto Third Street. As Myers followed the car east on Third Street—also a two-way street but without a marked centerline—he saw it stray into the westbound lane. Myers then turned on his red lights.

In response, the defendant pulled his car onto the gravel shoulder of Third Street, and Myers pulled up behind him. Both Myers and the defendant left their cars, meeting behind the defendant's Oldsmobile. Myers told the defendant that his brake lights were not working properly and that he had twice crossed the unmarked Third Street centerline. During this conversation, Myers noticed the odor of alcohol on the defendant's breath.

The defendant then performed a field sobriety test at Myers' request. Dissatisfied with the defendant's performance, Myers arrested the defendant for driving under the influence (DUI) and gave him the requisite statutory warnings. He then took the defendant to the Henderson County jail, where he again read the defendant the warnings and gave him a copy of the paperwork. The defendant consented to take a breathalyzer test. As Myers watched, an Illinois state trooper named Dennison administered the test, which disclosed a blood-alcohol concentration of 0.12.

Based on this result, the defendant was notified of the statutory summary suspension of his driver's license. He then filed a "petition" to rescind the summary suspension, and a hearing was conducted. The petition alleged that: (1) he had not been adequately advised about the statutory warnings, and (2) as no evidence had been presented to verify the accuracy of the breathalyzer machine or the qualifications of its operator, the results were inadmissible and did not provide sufficient evidence to warrant the summary suspension of his license. At the beginning of the hearing, the trial court ruled that the State had the burden of showing that the suspension should not be rescinded, and directed the State to proceed with its evidence. The State then called as its only witness Police Chief Myers, who testified to the facts stated above. The State also attempted to introduce into evidence Myers' official, sworn report, which included the results of the breathalyzer, the notice of warning to the motorist, and other papers. The court admitted all of these into evidence, but reserved ruling upon whether the breathalyzer results contained in the report would also be admitted. After Myers had testified, the court ruled that the report could be admitted to the extent that it showed that Myers had observed the test, but could not be admitted to demonstrate the truth of the

results or the accuracy of the machine. The State introduced no evidence as to Trooper Dennison's certification to conduct such a test or as to the accuracy of the machine.

After the State rested, the defendant's counsel moved for a directed verdict and for the grant of his request for a rescission of his summary suspension. The circuit court held that the the defendant had been sufficiently warned of the statutory summary suspension provisions. The court also ruled, however, that the State was required to demonstrate the accuracy of the breathalyzer and the qualifications of its operator. The court reasoned that once the petition to rescind the suspension is filed, the burden of proof shifts to the State and the proceeding cannot proceed exclusively upon the officer's reports. The court also found that once the factors justifying the summary suspension are put it into issue by the filing of a request for a hearing, the State is required to abide by the rules of evidence. Since, absent a foundation, the test results were hearsay, they were inadmissible. The circuit court therefore rescinded the suspension of the defendant's license.

On appeal, the appellate court agreed, holding:

> "Although a conviction for driving a motor vehicle while under the influence of alcohol may be sustained even though based entirely upon the arresting officer's testimony and observations and not upon any scientific evidence of intoxication such as a breathalyzer test [citation], once the results of such a test are utilized in a proceeding, as they are in this case, then the rules governing admissibility of such test results must govern." (154 Ill. App. 3d at 148.)

The court did not explicitly consider the propriety of placing the burden of proof in a summary suspension proceeding upon the State. All other panels of the appellate court which have considered the issue have held that

the burden of the proof in summary suspension proceedings rests initially with the defendant-motorist; and that until the motorist presents a *prima facie* case for rescission the State is not required to demonstrate the accuracy of the breathalyzer results. *People v. Keller* (1988), 168 Ill. App. 3d 426; *People v. White* (1988), 167 Ill. App. 3d 439; *People v. Brandt* (1988), 165 Ill. App. 3d 406; *In re Summary Suspension of Driver's License of Vaughn* (1987), 164 Ill. App. 3d 49; *People v. Blythe* (1987), 153 Ill. App. 3d 292; *People v. Griffith* (1987), 153 Ill. App. 3d 856; *People v. Nunn* (1987), 156 Ill. App. 3d 604; *People v. Torres* (1987), 160 Ill. App. 3d 643; *People v. Sanders* (1987), 155 Ill. App. 3d 759.

This case thus presents three issues which are distinct, although closely intertwined: (1) whether the legislature intended to place the burden of proof in an action for rescission of a summary suspension upon the motorist, (2) whether placing the burden of proof upon the motorist denies the motorist due process of law, and (3) whether the State in a summary suspension hearing may prove the results of a breathalyzer test solely by reliance upon the arresting officer's reports, or whether it must instead establish the foundation for the admission of the results normally required in a criminal DUI proceeding.

We begin with the pertinent provisions of the Illinois Vehicle Code. After a summary suspension of a driver's license has taken effect (see Ill. Rev. Stat. 1985, ch. 95½, par. 2—118.1):

> "[The motorist] may make a written request for a judicial hearing in the circuit court of venue. The request to the circuit court shall state the grounds upon which the person seeks to have the statutory summary suspension rescinded. Within 30 days after receipt of the written request or the first appearance date on the Uniform Traffic Ticket issued pursuant to a violation of Section 11—501 [the DUI statute], or a similar provision of a local ordi-

nance, the hearings shall be conducted by the circuit court having jurisdiction. This judicial hearing, request or process, shall not stay or delay the statutory summary suspension. Such hearings shall proceed in the court in the same manner as in other civil proceedings.

The hearing may be conducted upon a review of the law enforcement officer's own official reports; provided however, that the person may subpoena the officer. Failure of the officer to answer the subpoena shall be considered by the court to be the same as the failure of a complaining witness to appear in any criminal proceeding.

The scope of the hearing shall be limited to the issues of:

1. Whether the person was placed under arrest for an offense as defined in Section 11—501, or a similar provision of a local ordinance, as evidenced by the issuance of a Uniform Traffic Ticket; and

2. Whether the arresting officer had reasonable grounds to believe that such person was driving or in actual physical control of a motor vehicle while under the influence of alcohol, other drug, or combination thereof; and

3. Whether such person, after being advised by the arresting officer that the privilege to operate a motor vehicle would be suspended if the person refused to submit to and complete the test or tests, did refuse to submit to or complete such test or tests to determine the person's alcohol or drug concentration; or

4. Whether the person, after being advised by the arresting officer that the privilege to operate a motor vehicle would be suspended if the person submits to a chemical test, or tests, and such test discloses an alcohol concentration of 0.10 or more, and such person did submit to and complete such test or tests which determined an alcohol concentration of 0.10 or more." (Ill. Rev. Stat. 1985, ch. 95½, par. 2—118.1(b).)

As can be seen from the quoted language, the statute does not clearly allocate the burden of proof. The statute's ambiguity on this point means that we must interpret it with some caution, and with an eye towards the

Federal and Illinois Constitutions. It is well established that a statute will be presumed constitutional, and where possible will be interpreted so as to avoid an unconstitutional construction. (*People v. Geever* (1988), 122 Ill. 2d 313, 324; *People v. Roos* (1987), 118 Ill. 2d 203, 210; *Gill v. Miller* (1983), 94 Ill. 2d 52, 56.) Thus, our interpretation of the statute must depend in part upon whether it is constitutional to place the burden of proof in a summary suspension proceeding upon the suspended motorist.

The constitutional provisions implicated are the due process clauses of the Federal and State Constitutions. (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2.) It is clear that the due process clause applies to the deprivation of a driver's license by the State. (*Bell v. Burson* (1971), 402 U.S. 535, 539, 29 L. Ed. 2d 90, 94, 91 S. Ct. 1586, 1589.) The procedural safeguards mandated by due process in a particular case vary, depending upon: (1) the significance of the private interest which will be affected by the official action, (2) the risk of the erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards, and (3) the significance of the State interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural safeguards would entail. (*Mackey v. Montrym* (1979), 443 U.S. 1, 11, 61 L. Ed. 2d 321, 329-30, 99 S. Ct. 2612, 2617; *Mathews v. Eldridge* (1976), 424 U.S. 319, 335, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 903.) Applying these criteria, we have previously held that delaying a hearing upon the validity of a summary suspension until a short time after the suspension takes effect does not offend due process. (*People v. Gerke* (1988), 123 Ill. 2d 85; *People v. Esposito* (1988), 121 Ill. 2d 491, 506-11; *People ex rel. Eppinga v. Edgar* (1986), 112 Ill. 2d 101, 110-11.) We have not previously determined, however,

whether placing the burden of proving the invalidity of the suspension upon the suspended motorist, particularly in combination with a prehearing deprivation, is also constitutional.

Consideration of the first factor, the importance of the private interest in a driver's license, does not by itself suggest that placing the burden of proof upon the motorist offends due process. A private interest in a driver's license is indeed significant, particularly where driving is essential to the motorist's livelihood. (*Bell v. Burson* (1971), 402 U.S. 535, 539, 29 L. Ed. 2d 90, 94, 91 S. Ct. 1586, 1589.) But the statute itself contains many procedural safeguards which are designed to ensure that the suspended motorist can continue to use his vehicle for essential purposes while challenging the validity of his suspension. (*People v. Gerke* (1988), 123 Ill. 2d 85.) Moreover, the interest in a driver's license, while undoubtedly important, is not quite so important as those private interests which have previously been held indefeasible absent the satisfaction by the State of a specified burden of proof. In all such cases the interests asserted have either involved life and liberty rather than property (see *In re Winship* (1970), 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (criminal conviction); *Addington v. Texas* (1979), 441 U.S. 418, 60 L. Ed. 2d 323, 99 S. Ct. 1804 (civil commitment proceeding)) or have touched upon "property" interests which are considerably more fundamental (*Santosky v. Kramer* (1982), 455 U.S. 745, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (termination of parental rights); *Speiser v. Randall* (1958), 357 U.S. 513, 2 L. Ed. 2d 1460, 78 S. Ct. 1332 (speech rights)).

Consideration of the second factor, the risk of erroneous deprivation, is somewhat more problematic. The principal risk relates to the results of chemical tests. The danger is that placing the burden of proof upon the motorist will discourage the State from properly maintain-

ing its equipment, training its personnel, or preserving its records. This danger is increased by the empirical fact that breathalyzer tests, while generally valid, are not foolproof. (See, *e.g., State v. Canaday* (1978), 90 Wash. 2d 802, 585 P.2d 1185; *Scales v. City Court* (1979), 122 Ariz. 231, 594 P.2d 97 (test results can be rendered invalid by: variations in volume of fluid contained in test ampoule, amount of potassium dichromate in ampoule, imperfections in ampoule glass, and foreign substances in fluid).) Their validity depends, in great measure, upon the maintenance and calibration of the machines and the training of their personnel. And while one might argue about the degree of this risk, it cannot be denied that placing the burden of proof upon the State would reduce it very significantly. State law enforcement personnel are hardly likely to be lax in their breathalyzer procedures if they know that they will have to prove the results or face the rescission of a summary suspension. This factor, therefore, favors placing the burden of proof upon the State.

Consideration of the third factor, the State's interest, cuts the other way. As previous cases have made clear, the State's interest in preserving the safety of its public highways is extremely important. Because the State can still remove suspect motorists from the road before a hearing without respect to whether it will ultimately bear the burden of proof, this interest is not so pressing as in those cases in which the question has been the overall propriety of prehearing summary suspension. It should also be noted that the State's interest in highway safety is adequately served so long as no suspended driver can reclaim his license until the conclusion of the hearing. But it cannot be denied that placing the burden of proof upon the State will entail significantly greater fiscal and administrative burdens. If every suspended motorist has a right to put the State to its proof, arrest-

ing officers and breathalyzer operators will be spending a great deal of their time and the State's money in court.

On balance we conclude that placing the burden of proof upon the suspended motorist would not violate the due process clause of either the Federal or the State Constitutions. As will be seen below, however, our conclusion is heavily influenced by our holding later in this opinion that the State will have the burden of showing the reliability of test results if the motorist first makes a *prima facie* showing that the results were unreliable. This holding considerably reduces the risk that placing the initial burden of proof upon all suspended motorists will result in the erroneous deprivation of any one motorist's license.

It remains to be determined whether the legislature intended that the initial burden of proof in a summary suspension proceeding should rest with the motorist. Consideration of the overall scheme strongly suggests that this indeed was the legislative intent. Under the new summary suspension statute, the suspension takes automatic effect after a series of ministerial procedures. (See Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.1.) The summary suspension can only be rescinded if the motorist takes the positive step of making a "written request for a judicial hearing in the circuit court of venue." (Ill. Rev. Stat. 1985, ch. 95½, par. 2—118.1(b).) Moreover, the statute also provides that "[s]uch hearings shall proceed in the court *in the same manner as in other civil proceedings.*" (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 95½, par. 2—118.1(b).) In the usual civil proceeding, the party requesting judicial relief bears the burden of proof. (*People ex rel. Rusch v. Fusco* (1947), 397 Ill. 468, 472; *Teter v. Spooner* (1922), 305 Ill. 198, 210.) Since it is now clear that a summary suspension is a civil, and not a criminal action (*People v. Gerke* (1988), 123 Ill. 2d 85),

it follows that the motorist, who is requesting judicial rescission of the suspension, should bear the burden of proof.

For the reasons given above, we hold also that placing the burden of proof upon the motorist does not violate the due process clause. Since the burden was upon the motorist, the circuit court erred: first, by requiring the State to go forward with evidence justifying the suspension, and, second, by rescinding the suspension even though the motorist had not presented any evidence for rescission. For the same reason, the appellate court erred by affirming the circuit court's decision.

Since the motorist was not put on notice that he was required to present a *prima facie* case for rescission, on remand he must be given an opportunity to do so. If, and only if, he presents such a case, the burden will shift to the State to come forward with evidence in rebuttal justifying suspension.

Since we resolve the State's appeal in this fashion, we are not required to reach the State's additional contention that it is entitled to rely on the breathalyzer test results incorporated into the officer's official reports, and need not establish a foundation for their admission. It is possible, however, that on remand the motorist will establish a *prima facie* case, and the question of how the State may rebut that case will arise. In the interests of clarity and judicial economy, we address the question of the admissibility of the test results.

The State apparently argues that breathalyzer results may be admitted in a rescission hearing without laying the usual foundation. It relies upon language in the statute stating that "[t]he hearing may be conducted upon a review of the law enforcement officer's own official reports; provided however, that the person may subpoena the officer." (Ill. Rev. Stat. 1985, ch. 95½, par. 2–118.1(b).) The State argues on the basis of this language,

and the absence of a statutory requirement for a foundation, that the legislature contemplated the admission of the breathalyzer test results in the officer's official reports.

But the Vehicle Code also contains another provision, which deals directly with the admissibility of breathalyzer test results. Section 11—501.2 (a) of the Code provides in pertinent part:

> "*Upon the trial of any civil or criminal action or proceeding arising out of an arrest for an offense as defined in Section 11—501* or a similar local ordinance, *evidence of the concentration of alcohol*, other drug or combination thereof *in a person's* blood or *breath at the time alleged*, as determined by the analysis of the person's blood, urine, breath or other bodily substance, *shall be admissible*. Where such test is made the following provisions shall apply:
>
> 1. Chemical analyses of the person's blood, urine, breath or other bodily substance to be considered valid under the provisions of this Section shall have been performed according to standards promulgated by the Department of Public Health in consultation with the Department of State Police by an individual possessing a valid permit issued by that Department for this purpose. The Director of the Department of Public Health in consultation with the Department of State Police is authorized to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analyses, to issue permits which shall be subject to termination or revocation at the discretion of that Department and to certify the accuracy of breath testing equipment. The Illinois Department of Public Health shall prescribe regulations as necessary to implement this Section." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.2(a)(1).)

The State argues that this provision applies only to the admission of chemical analysis of a person's breath with respect to criminal prosecution for driving under the in-

fluence of alcohol. This argument is without merit. Section 11—501.2(a) clearly states that it applies "[u]pon the trial of any civil or criminal action or proceeding arising out of an arrest for an offense as defined in Section 11— 501," *i.e.*, for driving while under the influence of alcohol. Since a summary suspension must be preceded by an "arrest for an offense as defined in Section 11—501" (Ill. Rev. Stat. 1985, ch. 95½, par. 2—118.1(b)), it can hardly be denied that a proceeding to rescind a summary suspension is a proceeding arising out of an arrest for an offense as defined in section 11—501.

We therefore hold that once the motorist has made a *prima facie* case that the breath test result did not disclose a blood-alcohol concentration of 0.10 or more, or that the test result did not accurately reflect his blood-alcohol concentration, the State can only avoid rescission by moving for the admission of the test into evidence and laying the required foundation. Such a foundation will include: (1) evidence that the tests were performed according to the uniform standard adopted by the Illinois Department of Public Health, (2) evidence that the operator administering the tests was certified by the Department of Public Health, (3) evidence that the machine used was a model approved by the Department of Health, was tested regularly for accuracy, and was working properly, (4) evidence that the motorist was observed for the requisite 20 minutes prior to the test and, during this period, the motorist did not smoke, regurgitate, or drink, and (5) evidence that the results appearing on the "printout" sheet can be identified as the tests given to the motorist. *People v. Winfield* (1975), 30 Ill. App. 3d 668, 672; *People v. Crawford* (1974), 23 Ill. App. 3d 398, 402-03; see also *People v. Black* (1980), 84 Ill. App. 3d 1050.

It only remains to consider what evidence presented by the motorist will constitute a *prima facie* case for re-

scission. Where the motorist argues for rescission on the basis that the test results were unreliable, such evidence may consist of any circumstance which tends to cast doubt on the test's accuracy, including, but not limited to, credible testimony by the motorist that he was not in fact under the influence of alcohol. We emphasize that this is not an invitation to commit perjury. Only if the trial judge finds such testimony credible will the burden shift to the State to lay a proper foundation for the admission of the test results. The trial judge's finding as to the *prima facie* case will not be overturned upon appeal unless against the manifest weight of the evidence.

For the foregoing reasons, the judgments of the circuit and appellate courts are reversed, and the cause is remanded to the circuit court of Henderson County for further proceedings in accordance with this opinion. The defendant's summary suspension is reinstated pending the outcome of the hearing.

> *Appellate court reversed; circuit court reversed; cause remanded; summary suspension reinstated.*

JUSTICE STAMOS took no part in the consideration or decision of this case.