THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES R. MARLEY, Defendant-Appellant.

Fifth District   No. 5—88—0095

Opinion filed November 15, 1988.

Alan Pretnar, of Taylor Springs, for appellant.

Barbara Adams, State's Attorney, of Hillsboro (Kenneth R. Boyle and Stephen E. Norris, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE HARRISON delivered the opinion of the court:

Defendant, James R. Marley, appeals from a judgment of the circuit court of Montgomery County denying his request for rescission of the summary suspension of his driver's license imposed pursuant to section 11—501.1 of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.1). As grounds for his appeal, Marley argues that the suspension cannot stand because: (1) he was not served with notice of the suspension "immediately" as required by section 11—501.1(f—1) of the Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—

501.1(f—1)), and (2) the circuit court did not require the State to lay a foundation for admission of the results of his breath test at the rescission hearing. For the reasons which follow, we find these arguments to be without merit. We therefore affirm.

The record shows that on the evening of Friday, January 1, 1988, defendant was driving through the town of Nokomis, Illinois, in his Ford pickup truck. He stopped at a stop sign at the intersection of South Maple and Route 16, "revved" the truck's engine, then "took off trying to spin its tires" as he turned right from South Maple onto Route 16. In the course of executing this turn, defendant lost control of his vehicle. The truck "jumped" the curb and struck a light pole. The force of the collision was so great that the pole was knocked off its base and into an awning hung from a nearby building.

After the collision, defendant backed his truck off the sidewalk where it had come to rest, reentered the roadway, and proceeded west down Route 16. All of these events were witnessed by Officer Keith Hancock of the Nokomis police department, who activated the light bar on his police cruiser and gave pursuit as defendant attempted to leave the scene. Hancock succeeded in causing defendant to pull over to the side of the road. He then approached defendant's truck and asked defendant to exit the vehicle and to exhibit his driver's license.

As Hancock spoke with defendant, he detected the odor of alcohol on defendant's breath. He also observed that defendant's speech was slow and that defendant "was unsure of what he was doing." Hancock thereupon decided to arrest defendant for "reckless driving, DUI and illegal consumption by a minor" and took him into custody.

After transporting defendant to the Nokomis police station, Hancock issued warnings to him regarding the possible summary suspension of his driver's license pursuant to section 11—501.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.1). Those warnings conformed to the requirements imposed by section 11—501.1(c) of the Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.1(c)) in situations where, as here, an individual is charged with driving under the influence of alcohol. According to Hancock, the warnings were read to defendant verbatim from a department form which Hancock had sworn to and signed. Defendant was also apparently given a copy of the form containing the warnings to read for himself.

After receiving the requisite statutory warnings, defendant was taken to the Montgomery County jail in Hillsboro, where the proper equipment was available for administering a breath-test analysis. Defendant was asked if he would submit to such a test, and he con-

sented. The test was then administered by Joseph W. LeBeane, an Illinois State trooper, using a machine called an Intoxilyzer. The test disclosed a blood-alcohol concentration of .19, which exceeded the legal limit.

Officer Hancock then proceeded to complete the necessary paperwork on defendant's arrest, including a notice of statutory summary suspension of defendant's driver's license pursuant to section 11—501.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.1). Before Hancock could serve a copy of the notice on defendant, however, defendant was able to post bond and, unknown to Hancock, he was released from custody by the jailer at the Montgomery County facility. Following repeated efforts to contact defendant so that he could be given the notice, service was finally accomplished the following Monday, January 4.

██ █ Defendant promptly requested the circuit court of Montgomery County to rescind the statutory summary suspension. (See Ill. Rev. Stat. 1987, ch. 95½, par. 2—118.1.) Following an evidentiary hearing, that request was denied, and defendant now appeals. On this appeal, as he did before the trial court, defendant contends that the suspension cannot stand because the delayed service of notice on him did not comport with section 11—501.1(f—1) of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.1(f—1)), which provides:

> "Effective January 1, 1987 and thereafter, the law enforcement officer submitting the sworn report under paragraph (d) shall serve *immediate* notice of the statutory summary suspension on the person ***." (Emphasis added.)

Defendant's position seems to be that the term "immediate" as used in this statute should be construed as meaning "instantly" or "at once" or "without interval of time," and that the three-day delay between his arrest and the service of the notice upon him rendered that service untimely and therefore ineffective.

The State, for its part, argues that the three-day delay should not operate to invalidate the statutory summary suspension here because defendant was fully advised by Officer Hancock of the possible consequences of the breathalyzer test or the refusal to submit to such a test, *i.e.*, that his driver's license could be suspended, and the delay resulted in no prejudice to him. We need not address this contention, however, because there is a more fundamental defect in defendant's analysis.

In our view, the basic flaw in defendant's position is that he interprets the statutory term "immediate" too narrowly. The courts of this

State have long held that where an act is required to be done "immediately," whether the obligation is imposed by law or by contract, this means that "the performance shall be with due and reasonable diligence in view of the circumstances of the case, and without unnecessary or unreasonable delay." (*Anderson v. Steinle* (1937), 289 Ill. App. 167, 171, 6 N.E.2d 879.) By this definition, service of the notice of the statutory summary suspension was, in fact, "immediate." As our discussion has indicated, defendant failed to receive the notice on the night of his arrest only because of an unintentional, administrative error. Following defendant's release, which took place on a Friday evening, efforts were made to contact defendant through his parents. When this proved unsuccessful, the police again attempted to reach defendant over the following weekend at his parents' house and elsewhere. These efforts likewise failed, but on the next regular business day, Monday, January 4, the police were able to effectuate service of the notice on defendant. Thus, once they discovered their mistake, the police acted diligently to correct it. We fail to see, and defendant has not shown, how the delay which took place could possibly be regarded as unnecessary or unreasonable under these circumstances.

■■ ■ Defendant's second and final argument is that the circuit court's judgment denying rescission of the statutory summary suspension must be reversed because the State was not required to lay the required foundation prior to admission into evidence of the results of defendant's breath test. This argument must also fail. Our supreme court has recently held that once a motorist has made a *prima facie* case that the breath test result did not disclose a blood-alcohol concentration of 0.10 or more, or that the test result did not accurately reflect his blood-alcohol concentration, the State can only avoid rescission by moving for the admission of the test into evidence and laying the required foundation. (*People v. Orth* (1988), 124 Ill. 2d 326, 340.) In this case, however, defendant did not establish such a *prima facie* case. Indeed, no evidence of any kind was presented by defendant which suggested in any way that the breath test result did not in fact disclose a blood-alcohol concentration in excess of 0.10 or that his blood-alcohol concentration was not accurately reflected by the test result. Because no *prima facie* showing was made that the test results were unreliable, the State had no obligation to establish a foundation for admission of those test results.

Even if, *arguendo*, defendant had presented a *prima facie* case for rescission, defendant's argument would still fail given the record before us here. That record reveals that the State called as a witness the Illinois State trooper who administered the breath test to defend-

ant. That trooper, Joseph W. LeBeane, indicated that he was certified to operate the Intoxilyzer machine which was used to test defendant's blood-alcohol concentration. He explained the procedures which he followed in administering the test to defendant and told the court what the results of the test were. Defendant's attorney was then given an ample opportunity to cross-examine him, and the results of the breath test were admitted into evidence without objection. Absent such an objection, defendant cannot now claim that the evidentiary foundation laid by the State was somehow deficient. See *People v. Angelino* (1987), 160 Ill. App. 3d 632, 638, 513 N.E.2d 1132, 1135.

For the foregoing reasons, the judgment of the circuit court of Montgomery County is affirmed.

Affirmed.

LEWIS and CALVO, JJ., concur.