THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CLIFFORD W. ALLCORN, Defendant-Appellee.

Second District    No. 2—88—0529

Opinion filed May 25, 1989.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Brian D. St. Hilaire, of Glen Ellyn, for appellee.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

The State appeals from a judgment of the circuit court of Du

Page County which granted the defendant's petition for rescission of the statutory summary suspension of his driving privileges, pursuant to section 2—118.1 of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1987, ch. 95½, par. 2—118.1). The State contends that the trial court impermissibly considered the defendant's state of mind in finding no reasonable grounds for the arrest and that the trial court improperly based its order for rescission on its determination that the arresting officer should have attended to an existing medical emergency prior to processing the defendant's arrest. We do not believe the trial court's findings regarding reasonable grounds were against the manifest weight of the evidence and therefore affirm its judgment.

The defendant has not filed a brief in this matter; however, where the record is simple and the issues capable of easy resolution, a reviewing court may decide the merits of such an appeal. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 131-33.

The defendant was arrested at 5:42 a.m., March 26, 1988, by an Elmhurst police officer and charged with driving under the influence of alcohol in violation of section 11—501(a)(1) of the Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(a)(1)). He refused to submit to a breathalyzer test at the police station, and, on the basis of his refusal, the arresting officer prepared a law enforcement sworn report and served notice upon the defendant of the summary suspension of his driving privileges pursuant to section 11—501.1 of the Code. (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.1.) The defendant timely requested a summary suspension hearing at which he presented his own testimony and that of the arresting officer. The following facts were adduced at the hearing.

The defendant was transporting his fiancee, who had injured her mouth and teeth, to the dentist and was traveling eastbound on North Avenue in Elmhurst when he observed two police squad cars leaving a parking lot. He pulled over into the right-hand eastbound lane and signaled to one of the police cars to stop. Officer Steven Weatherford of the Elmhurst police pulled in front of the defendant's automobile and met the defendant between the cars. The defendant was extremely agitated and reported to Officer Weatherford that he had a medical emergency. The officer observed the defendant to have red, bloodshot eyes and a strong odor of alcoholic beverage about his person and so proceeded to require the defendant to submit to field sobriety tests. The defendant performed them rapidly, not waiting for complete instructions on each test, and was unable to perform the one-leg balancing test. Officer Weatherford arrested the defendant for

driving under the influence of alcohol and transported him to the Elmhurst police station, while another police officer escorted the defendant's fiancee to the dentist's office.

The defendant testified that he had had two wine spritzers with dinner at approximately 8 p.m. the preceding evening and one-half to three-fourths of a scotch and water sometime shortly before the incident. He stated that he and his fiancee were preparing to get into a hot tub in the early morning hours when she tripped and fell, injuring her teeth. The defendant said he attempted to assist his fiancee, then contacted the dentist and proceeded to take his fiancee to the dentist's office for emergency medical attention. He testified that he was travelling approximately 35 miles per hour when he saw the two squad cars and signaled them to stop. He stated that he explained to the police officer that there was a medical emergency and the police officer asked him if he was a doctor. The defendant testified that when he said he was not a doctor, the police officer allegedly told him that he would decide who had a medical emergency. The defendant stated he was extremely agitated and became more and more upset as the police officer administered the field sobriety tests. He stated that he told the police officer he could not stand on his left leg due to prior injuries and continuously insisted that his fiancee be taken care of first. When asked by the State's Attorney whether he had indicated to the officer that he had four or five scotches that evening, the defendant replied, "No. That is only half of what I told him. I said, 'Whether it's four or five scotches or fifty or sixty scotches, I don't have time for this.'" While the exchange between the defendant and Officer Weatherford continued, the defendant's fiancee remained seated in the car. The defendant testified that she continued to bleed from the mouth, while Officer Weatherford stated he observed blood on the woman's pant leg but did not see her actually bleeding at the time.

Officer Weatherford testified that he observed the defendant's car proceeding eastbound on North Avenue at a high rate of speed. Although he did not have a radar device, he estimated the speed to be approximately 60 miles per hour. The officer stated that defendant's car passed him as he was exiting a parking lot. He said the defendant then pulled over in a lane of traffic and signaled for him to stop. Upon exiting the vehicle, Officer Weatherford met the defendant and noticed a strong odor of alcoholic beverage on the defendant's breath. He also observed that the defendant's eyes were glassy and bloodshot and that he had blurred speech. Weatherford further reported that the defendant had difficulty in removing his driver's license from his

wallet. The officer testified that the defendant told him there was a medical emergency but did not recall what he said to the defendant in response. He further stated that he spoke to the woman in the defendant's car to ask if she was alright and received a positive response. Officer Weatherford then proceeded to administer field sobriety tests and asked the defendant whether he had had anything to drink. He reported that the defendant was unable to perform the heel-to-toe test and swayed while attempting to perform the one-leg stand. He further stated that the defendant told him he had had four or five scotches. Officer Weatherford testified that he was of the opinion at that time that the defendant was intoxicated based upon his observations, including the rate of speed at which the defendant's vehicle had been traveling.

On cross-examination, Officer Weatherford admitted that during emergencies he had operated a vehicle in excess of the speed limit; he further admitted that, under such circumstances, his speeding did not indicate that he was under the influence of alcohol at that time. The officer could not recall whether the defendant had told him about previous injuries to his left leg. He also admitted that the defendant was able to understand all of his instructions with regard to the field sobriety tests.

During further cross-examination, Officer Weatherford admitted that the defendant continued to insist there was a medical emergency he was attending to and that the emergency appeared to be the defendant's primary consideration. The officer failed to ask the defendant whether he wore contacts, how much sleep he had and whether he had had eye defects or injuries recently and admitted that there were many reasons for glassy and bloodshot eyes other than alcohol consumption.

The court briefly questioned the officer, stating:

"Wouldn't it appear that someone looking for dental services at 5:40 in the morning is in a bit of an emergency?

THE WITNESS: Yes."

The court then found for the defendant "on the basis that *** the officer should have attended to the emergency first and then to the defendant second." The court's written order indicated the court's finding in favor of the defendant based upon the lack of reasonable grounds and upon the fact that the field sobriety tests and results "were tainted by [the defendant's] anxiety which developed when [the arresting] officer did not first attend to a 5:40 AM Dental Emergency prior to the Field's Sobriety Tests." The State's timely appeal ensued.

On appeal, the State contends that the trial court improperly con-

sidered the defendant's state of mind at the time of the arrest. Further, the State argues that the arresting officer's exercise of judgment in handling the situation, *i.e.*, whether to attend to defendant or the defendant's fiancee first, is not an issue in a summary suspension rescission hearing. Thus, the State contends that the trial court's consideration of these factors exceeded the statutory scope of the summary suspension rescission hearing as provided in section 2—118.1(b) of the Code (Ill. Rev. Stat. 1987, ch. 95½, par. 2—118.1(b)).

As a general proposition, a motorist challenging the summary suspension of his driving privileges bears the burden of establishing a *prima facie* case for rescission. (*People v. Orth* (1988), 124 Ill. 2d 326, 340.) The trial court's finding regarding the burden of proof and whether it has been satisfied will be overturned only if the finding is against the manifest weight of the evidence. *Orth*, 124 Ill. 2d at 341; *People v. Sanders* (1988), 176 Ill. App. 3d 467, 469; *People v. Torres* (1987), 160 Ill. App. 3d 643, 646.

At the hearing, the defendant testified that he was attending to a medical emergency at the time of his arrest and admitted that he was extremely agitated throughout his exchange with Officer Weatherford. Officer Weatherford testified to his observations of the defendant's demeanor, appearance and actions upon which he based his opinion that the defendant was under the influence of alcohol; he admitted, however, that he knew the defendant was very concerned about an ongoing medical emergency which appeared to be his primary consideration at that time. In short, the defendant offered a reasonable alternative explanation for many of Officer Weatherford's observations which tended to rebut the conclusion that the defendant was under the influence of alcohol at the time.

In *People v. Griffith* (1987), 153 Ill. App. 3d 856, the defendant motorist refused to take a breathalyzer test after submitting to field sobriety tests. His driving privileges were suspended, and he requested a rescission hearing. He offered his own testimony and that of four witnesses who indicated that the defendant did not appear intoxicated to them at or near the time of the arrest. The State presented the testimony of the arresting officer. The trial court denied defendant's rescission petition and we affirmed. We held that the trial court's placement of the burden of proof on the defendant was proper, and we determined that whether the defendant has met his burden of proof is solely within the province of the trial court and its finding will not be overturned absent an abuse of discretion. *Griffith*, 153 Ill. App. 3d at 861.

In *Griffith*, it was clear that the trial court chose to disbelieve

the defendant's witnesses and believe the arresting police officer. In the case at bar, the trial court accepted as credible the defendant's testimony regarding his agitation and emotional turmoil resulting from the ongoing medical emergency and concluded that the arresting officer failed to take these factors into account when summing up his observations of the defendant's demeanor at the time of arrest. We note that reasonable grounds to arrest an individual for driving under the influence exist

"where the facts and circumstances known to the arresting officer are sufficient to warrant a [person] of reasonable caution to believe an offense has been committed. [Citation.] This standard requires more than mere suspicion, but does not require the officer to have in hand evidence sufficient to convict. [Citation.] This determination is to be based upon all the facts and circumstances of each case and made in a manner which is not unduly technical." *Sanders*, 176 Ill. App. 3d at 470.

The State contends that the trial court focused solely upon the defendant's state of mind and failed to make any findings as to the arresting officer's knowledge of the existence of that state of mind or as to the officer's knowledge that the poor test results might be caused by such anxiety. The record establishes that Officer Weatherford knew of the existence of a medical emergency, that he noted that the emergency appeared to be the defendant's primary consideration at the time, and that he observed blood on the passenger in the defendant's car. Thus, we believe that the State's conclusion that the trial court made no finding regarding the facts and circumstances known to the officer is unwarranted. The State's insistence that the defendant's state of mind had no bearing on Officer Weatherford's knowledge in assessing probable cause misses the point. It is true that an arresting officer's finding for reasonable grounds for arrest is to be based upon the facts and circumstances known to him at the time of the arrest. (See *Sanders*, 176 Ill. App. 3d at 470.) However, in this case, the police officer knew of the existence of an ongoing medical emergency and had reason to know of the defendant's agitation and anxiety concerning the emergency. In view of the defendant's testimony, the trial court could have found that the defendant's agitation caused him to try to complete the field sobriety tests too quickly and attempt each one prior to Officer Weatherford's completed instructions. Further, the officer claimed that the defendant informed him he had had "four or five scotches," and this testimony was directly rebutted. The defendant's evidence at a summary suspension rescission hearing may include his own credible testimony

that he was not under the influence of alcohol at the time of the arrest. *Orth,* 124 Ill. 2d at 341.

As we stated above, we will not reverse a trial court's judgment in a rescission hearing unless the judgment is against the manifest weight of the evidence. "For a judgment to be against the manifest weight of the evidence, it must appear that a conclusion opposite to that reached by the trier of fact is clearly evident." (*Central Production Credit Association v. Kruse* (1987), 156 Ill. App. 3d 526, 532.) As the trial court's judgment is adequately supported by the evidence adduced at the hearing and is not arbitrary or unreasonable, we decline to reverse. See *Sloan v. O'Dell* (1987), 159 Ill. App. 3d 268, 272-73.

Accordingly, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

INGLIS and NASH, JJ., concur.