THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. TIMOTHY L. KILPATRICK, Defendant-Appellee.

Second District   No. 2—90—0617

Opinion filed July 26, 1991.

James E. Ryan, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, and William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Donald J. Ramsell, of Ramsell & Associates, of Wheaton, for appellee.

JUSTICE DUNN delivered the opinion of the court:

The State appeals from an order of the circuit court of Du Page County which granted the motion *in limine* of defendant, Timothy L. Kilpatrick, and prohibited the State from introducing the results of defendant's breathalyzer test into evidence at trial. The sole issue raised by the State on appeal is whether the trial court properly excluded evidence of the breathalyzer test based on the alleged improper certification of the breathalyzer machine. We reverse and remand.

On December 3, 1989, defendant was charged with speeding (Ill. Rev. Stat. 1989, ch. 95½, par. 11—601(b)), driving under the influence

of alcohol (DUI) (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501(a)(2)), and driving with an alcohol concentration in his blood or breath in excess of 0.10 (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501(a)(1)). Also on that date, Officer Tony Klotka prepared a "law enforcement sworn report" and served notice upon defendant of the summary suspension of his driver's license pursuant to section 11—501.1 of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.1). The report stated that defendant submitted to testing which disclosed an alcohol concentration of .13.

Defendant filed a petition for a hearing seeking rescission of the summary suspension of his driver's license. The trial court rescinded the statutory summary suspension, finding that the breathalyzer machine was not shown to be properly certified. This ruling was not appealed. Defendant subsequently filed an amended motion *in limine* asking that the State be prohibited from using evidence of the results of the chemical test administered to defendant at trial because: (1) the instrument used for the testing was not accurate within ± 0.01% W/V as required by the relevant regulations; and (2) there was a failure to comply with the 20-minute continuous observation period prior to administering the test.

A hearing was held regarding the motion *in limine*. The parties stipulated that the testimony of Officer Tony Klotka from the prior hearing regarding defendant's petition for rescission of the statutory summary suspension could be considered as evidence. At the prior hearing, Klotka initially testified that he began observing defendant at 1:12 a.m. and obtained an analysis of defendant's breath at 1:31 a.m. Klotka later testified, however, during cross-examination by the State, that he actually began observing defendant five minutes prior to 1:12 a.m. He then stated that he did not lose sight of defendant from 1:07 a.m. until 1:31 a.m. and that, during that time period, defendant did not eat, drink, smoke, vomit or regurgitate. Klotka stated that 1:12 a.m. was actually the time when he read defendant the "warning to motorists."

At the hearing regarding the defendant's motion *in limine*, Klotka again testified and identified the logbook for the Intoxilyzer 5000 machine that was used to test defendant's breath. He testified that the logbook showed that the machine was tested on December 8, 1989, by John Dorko, a Department of Public Health inspector. Dorko's entry in the logbook stated that the solution used to test the machine was lot number 89—145. The results of the test registered in the logbook were ".09" and ".09." At the prior hearing, Klotka testified that the logbook indicated that the machine was certified on De-

cember 8, 1989. He also testified that the machine is capable of reading three digits, but only printed two. He stated that their instrument only records a two-digit number.

Dietmar Grohlich, a toxicologist for the Department of Public Health, testified that he produced the simulator solution designated as lot No. 89—145. The certificate of analysis for that solution was admitted into evidence. It showed that the solution had a recorded value of 0.101% W/V BAC. A certified copy of the Intoxilyzer model 5000 operator's manual was also admitted into evidence.

The prosecutor requested a directed finding following this evidence. He first argued that the evidence presented was sufficient to establish an observation period in excess of 20 minutes. The prosecutor also contended that, in order to agree with defendant's argument that the machine was not certified as accurate within $\pm$ 0.01 as required by the regulations, the court would have to conclude that subtracting .09 from .101 resulted in a difference of .011. The prosecutor stated that this was not correct because he did not believe that it was possible to make that subtraction or compare those two numbers. He argued that .09 is not equivalent to .090 because the third digit could be any of the 10 digits, 0 through 9. He stated that he did not believe that evidence in a criminal case should be kept out on the basis of speculation alone.

Defense counsel argued that the operator's manual states that the machine used in this case was capable of reading three digits, and he maintained that it was the State's burden to establish what the third digit was. He pointed out that, according to the operator's manual, a switch on the machine could have been turned on to read and print the third digit. Defense counsel contended that, absent proof to the contrary, .09 can only be .09 and cannot be .091, so must be considered the equivalent of .090.

In response, the prosecutor noted that the operator's manual states that the machine used just truncates or drops off the third digit. It does not round off the numbers, but just drops off anything after the two digits which were printed. He then stated that the "only way you can compare these numbers without having any idea what that third digit is in the .09 reading is to truncate the third digit in the .101." He also stated that the Department of Public Health standards do not require measurement in terms of thousandths.

The trial court noted that Klotka's testimony regarding the 20-minute observation period was "possibly ambiguous" and "marked by some inconsistencies." It then stated, however, that "the principal thrust of the motion *** really goes to the certification of the ma-

chine." It then determined that .09 would be .090 if extended one more place and there was therefore a variance of .011 between the sample and the test result which was one-thousandth greater than the accepted margin of error according to the regulations. It then denied the State's motion for a directed finding.

The State then recalled Dr. Grohlich. Grohlich testified that he has a B.S. degree in chemistry, a master's degree in German linguistics and a Ph.D. in pathology. He is the supervisor of the toxicology laboratory. He stated that, based on his training and experience, a tolerance of .01 means that an acceptable test result would be .09, .10 or .11. He also testified that the difference between .101 and .09 is .01. He stated that this was because he did not know what the third digit in the second number was, so he would disregard the third digit in the first number. Grohlich testified that breathalyzer machines are always certified to two digits.

During cross-examination, Grohlich stated that he did not know whether anybody had ever certified a machine to more than two digits. In responding to defense counsel's questions, he also gave the following testimony:

"Q. [I]f you were to take these two numbers and you were required to go to the third decimal, what would be the difference between .101 and .09?

A. If I would be required to go to the third decimal?

Q. Right. If you had to carry these two numbers, .101 and .09, you were to find the difference between the two of them to the third digit, what mathematically, pure mathematics, is the difference between those two numbers?

A. I would actually place a 0 then.

Q. What would the result be?

A. And the result, .011.

Q. Mathematically that is how you would do that equation, correct?

A. That is right."

During redirect examination, Grohlich acknowledged that placing the zero after .09 would be speculation on his part and stated, "[a]s a teacher, I would say it is actually wrong because I added the 0 on my own account" which would be "defin[ing] a value which in essence is not defined."

Following this testimony, the trial judge admitted that he was no expert in mathematics and noted that "these are very minute, infinitesimally small quantities we are talking about here." He nevertheless determined that the mathematical result derived from comparing the

two numbers was ".011 or eleven thousandths which is one thousandth greater than the acceptable margin of error." He therefore granted defendant's motion *in limine*.

The State filed a certificate of impairment and a timely notice of appeal.

On appeal, the State argues that the trial court's decision must be reversed because the court improperly required the test to be performed to a standard higher than that required by the rules of the Department of Public Health and prior decisions of this court. It contends that figures pertaining to breathalyzer measurement are intended by the regulations to be measured only to two digits. We agree, and we reverse.

■ The results of chemical tests are admissible in a criminal DUI prosecution only when there is compliance with section 11—501.2 of the Code (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.2) and the regulations promulgated thereunder. (*People v. Hamilton* (1987), 118 Ill. 2d 153, 160; *People v. Zator* (1991), 209 Ill. App. 3d 322, 326-27.) Section 11—501.2(a)(1) provides that, in order for chemical tests "to be considered valid," they "shall have been performed according to standards promulgated by the Department of Public Health in consultation with the Department of State Police." Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.2(a)(1).

■ In *People v. Caruso* (1990), 201 Ill. App. 3d 930, we held that the court in *People v. Orth* (1988), 124 Ill. 2d 326, set out all of the foundational requirements for the admission of a breath-analysis result. (*Caruso*, 201 Ill. App. 3d at 939.) The court in *Orth* stated that the foundational requirements include:

> "(1) evidence that the tests were performed according to the uniform standard adopted by the Illinois Department of Public Health, (2) evidence that the operator administering the tests was certified by the Department of Public Health, (3) evidence that the machine used was a model approved by the Department of Health, was tested regularly for accuracy, and was working properly, (4) evidence that the motorist was observed for the requisite 20 minutes prior to the test and, during this period, the motorist did not smoke, regurgitate, or drink, and (5) evidence that the results appearing on the 'printout' sheet can be identified as the tests given to the motorist." (*Orth*, 124 Ill. 2d at 340.)

In *People v. Keith* (1990), 206 Ill. App. 3d 414, *appeal allowed* (1991), 137 Ill. 2d 669, the court held that, in ruling on a motion *in limine*, "it is proper to require the State to show the standards were met, by

laying the foundation set forth in *Orth*, before admitting the test results." *Keith*, 206 Ill. App. 3d at 421.

The issue raised in this case is whether the trial court erred in determining that the State did not meet its burden to show that the breath-analysis machine used to test defendant's breath was properly certified as accurate pursuant to the statute and applicable regulations. As relevant here, the regulations state:

"An instrument must be accurate within ± 0.01% W/V [weight of alcohol in the volume of breath] to be certified. To determine accuracy of instruments, an inspector shall perform two (2) analyses on a certified controlled reference sample at least once a month at intervals not to exceed 45 days. The inspector shall record test results of his certification in the instrument log book. The original certification test results will be retained by the inspector." 77 Ill. Adm. Code §510.100(a) (1985).

■ We stated in *Caruso* that, in order for the State to meet the requirement set out in *Orth* that the machine was tested regularly for accuracy and was working properly, the State need only show that the machine was inspected and certified within 45 days (and at least once a month) and that the machine did not exhibit any malfunction at the time of the test. (*Caruso*, 201 Ill. App. 3d at 941.) The evidence in this case established that the machine was certified on December 8, 1989; this was only 22 days prior to the date of the test, December 30, 1989.

Here, however, defendant presented evidence that the solution used for testing the machine had a value of .101% W/V and the test results on December 8, 1989, were .09 and .09. This was enough to raise a question as to whether the machine was certified accurate within ± 0.01% W/V as required by the regulation. *Cf. People v. Stein* (1991), 212 Ill. App. 3d 164, 167 (mere inference that a machine was unreliable rebutted by evidence of the inspector's certification).

In this case, then, the State had the additional burden of proving that, as required by the regulation, the machine had been certified accurate within ± 0.01% W/V. We conclude that the State met this burden.

■ The same rules used in the construction of statutes apply when construing regulations promulgated by an administrative agency. (*People v. England* (1989), 188 Ill. App. 3d 9, 13, citing *Northern Illinois Automobile Wreckers & Rebuilders Association v. Dixon* (1979), 75 Ill. 2d 53, 58.) Therefore, the language of the regulation should be given its plain and ordinary meaning. *England*, 188 Ill. App. 3d at 13.

The regulation at issue provides that the acceptable margin of error on a breathalyzer machine is 0.01%. This margin of error is accounted for throughout the statutory scheme. (*People v. Davis* (1989), 180 Ill. App. 3d 749, 754.) The statutory and regulatory scheme does not require accuracy greater than +0.01% to -0.01%. See *People v. Crabbe* (1990), 195 Ill. App. 3d 163, 166-67 (regulation requiring that an instrument be accurate within ± 0.01% does not require a margin of error of less than ± 0.01%).

Grohlich testified that, based on his training and experience, a margin of error of .01 means that a test result of .09, .10 or .11 would be acceptable. In this case, the test results were .09 and .09, and the machine was certified as accurate.

Defendant argues that, based on Grohlich's testimony during cross-examination, it is "undisputed that the mathematical difference between [the] two values is .011." He contends that .011 is clearly greater than the .01 margin of error allowed by the regulation so the trial court's ruling must be affirmed.

■ We acknowledge that this is a compelling argument, one which was understandably accepted by the trial court. We also can see the logic in the State's argument before the trial court that, because .09 does not necessarily equal .090, .09 cannot be accurately subtracted from .101 so that, to compare the two numbers, .101 must be considered .10. We decline, however, to require courts to determine the relative merit of various mathematical theories and practice in order to determine if a breathalyzer machine has been properly certified. This was not the intention of the legislature or the regulators. For purposes of the narrow issue presented here, we hold that accuracy beyond two digits is not required by the regulations. Therefore, where a breathalyzer machine tests a certified controlled reference sample and the result is .09, .10 or .11, the machine may be considered accurate within ± 0.01% as required by the relevant regulation and may be properly certified.

We recognize that the court in *People v. Crabbe* (1990), 195 Ill. App. 3d 163, in reaching its conclusion that accuracy within ± 0.01% does not require a margin of error of less than ± 0.01%, noted that the machine used in that case was capable of yielding numerical results of only two digits to the right of the decimal point. (*Crabbe*, 195 Ill. App. 3d at 166.) There was evidence presented in this case that the machine was capable of yielding numerical results of three digits to the right of the decimal point. This does not affect our conclusion that accuracy beyond two digits is not required by the statutory and regulatory scheme involved.

■ We also disagree with defendant's argument that the failure of the State to include the Intoxilyzer model 5000 operator's manual in the record on appeal requires that the trial court's ruling be affirmed. Defendant contends that he cannot argue that this evidence supported the trial court's findings because the record is incomplete. We note that it was defendant who requested leave to remove the operator's manual in the trial court. The prosecutor did not object, noting that he could refer to the transcript if necessary. We conclude that the report of proceedings does contain adequate references to the manual for purposes of our resolution of the issue raised.

■ The State has also argued that the trial court's ruling cannot be affirmed based on defendant's assertion that the police officer failed to comply with the required 20-minute observation period. It contends that this was not the basis of the trial court's decision and notes that the evidence supports a finding that defendant was observed for more than 20 minutes. Defendant has not argued on appeal that the trial court's ruling should be affirmed on this alternative basis. We conclude that, while the trial court stated that Klotka's testimony regarding the 20-minute observation period was "possibly ambiguous" and "marked by inconsistencies," it implicitly found that the evidence was sufficient to establish that this requirement was met by basing its decision solely on its finding that the machine was not properly certified. We agree that there was sufficient evidence to show compliance with the 20-minute observation requirement. See *People v. Zator* (1991), 209 Ill. App. 3d 322, 327-28.

For the foregoing reasons, the judgment of the circuit court of Du Page County which granted defendant's motion *in limine* is reversed, and the cause is remanded for trial.

Reversed and remanded.

WOODWARD and BOWMAN, JJ., concur.