Rule 23 Order filed

August 5, 1998;

Motion to publish granted

December 1, 1998.
 NO. 5-96-0787

IN THE 

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from the 

                                     )  Circuit Court of 

     Plaintiff-Appellant,            )  Williamson County.

                                     )  

v.                                   )  No. 95-TR-2512

                                     )  

ARTHUR R. MORRIS,                    )  Honorable

                                     )  Robert A. Drew, 

     Defendant-Appellee.             )  Judge, presiding.  

_________________________________________________________________

JUSTICE GOLDENHERSH delivered the opinion of the court:

This matter comes to the court on appeal from the circuit court of Williamson County, which suppressed evidence of a breathalyzer test given on defendant, Arthur R. Morris.  The State timely filed a certificate of substantial impairment and a notice of appeal and argues in this court that the trial court's ruling excluding the breathalyzer test was manifestly erroneous.  For the reasons given below, we affirm.

I.  FACTUAL BACKGROUND

Defendant was arrested on March 25, 1995, and charged with improper lane usage and driving while under the influence of alcohol.  An information charging the alcohol offense was subsequently filed in January 1996.  Defendant's counsel filed a motion 
in limine
 to exclude the results of the breathalyzer test, arguing that the machine was not calibrated to standards required by State regulations and that the results given in units of concentration were not consistent with manufacturer recommendations 

for the machine, also mandatory under the State statute and regulations.

The circuit court conducted an evidentiary hearing on defendant's motion.  Illinois State Trooper Steve Junk testified that he calibrated the machine, a model 5000 Intoxilizer, with a reference solution certified to render a reading of .10 plus or minus .01 on a properly operating machine.  Defendant's counsel noted that the machine listed three digits for a readout and asked why the breathalyzer read only two figures as opposed to three.  Trooper Junk replied that the State accepts two figures.  He also testified that the sequence of operation on the breathalyzer was calibra­tion and breath mode and the testing sequence did not end in an air blank.  Ron Henson, after acceptance by the court as an expert witness, testified as to the range of deviation a two-digit readout would have when a sample was certified to a third-digit reading.  The example used was that if a breathalyzer produced a reading of .09 on a sample certified as .101, the third digit of that .09 reading could be anywhere from 0 to 9.  If the reading were 0 (.090), then the deviation from the standard would be .011.  This deviation, Henson testified, is greater than the maximum deviation allowed by statute, being .01.  He also testified that any machine that did not print out an air blank ending the sequence of operation was not being operated according to manufacturer's recommen­da­tions.  He testified that this deviation from manufacturer's recommendations would violate regulations of the Illinois Depart­ment of Public Health.  Henson testified that in his expert opinion defendant's breath test did not comply with the standard required by the Illinois Depart­ment of Public Health regulations.  Trooper Junk was recalled by the State and testified that when he tested the reference sample certified as .10 plus or minus .01, the machine produced a reading of .09.  He further testified that while the machine is capable of producing a three-

digit reading, the third-place digit on the machine has never been turned on.  Officer Les Higgins then testified that he conducted the breathalyzer test administered to defendant and that he was qualified to operate the machine on the date of testing.

The circuit court took the matter under advisement and received written memoranda from the parties.  The circuit court, on November 9, 1996, entered an order granting defendant's motion.  The State timely filed a notice of appeal and a certificate of impairment.

II.  ANALYSIS

Defendant made two basic arguments to the circuit court and reiterates those arguments here.  Those arguments are that the breathalyzer machine was not calibrated to the standards required by the State regulation and that the operation concerning units of concentration of alcohol was not consistent with regula­tions because it was inconsistent with manufacturer recommenda­tions.  The statutory basis relied upon by defendant is section 11-501.2(a) of the Illinois Vehicle Code (625 ILCS 5/11-501.2(a) (West 1994)), which reads as follows:

"(a)  Upon the trial of any civil or criminal action or proceeding arising out of an arrest for an offense as defined in Section 11-501 ***, evidence of the concentration of alcohol, other drug[,] or combination thereof on a person's blood or breath at the time alleged, as determined by analysis of the person's blood, urine, breath[,] or other bodily substance, shall be admissible.  Where such test is made[,] the following provisions shall apply:

1.  Chemical analyses of the person's blood, urine, breath[,] or other bodily substance to be considered valid under the provisions of this Section shall have been performed according to standards promulgated by the Department of Public Health in consultation with the Department of State Police ***.  The Illinois Department shall prescribe regulations as necessary to implement this Section.

* * *

5.  Alcohol concentration shall mean either grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath."  625 ILCS 5/11-501.2(a)(1), (5) (West 1994).

The administrative regulation promulgated pursuant to the above statute relied upon by defendant is section 510.60 of Title 77 of the Illinois Administrative Code:

"Procedures for breath alcohol analysis shall include the following requirements in conjunction with the testing of each subject:

* * *

d) Each test shall be performed according to an operational procedure approved by the Department which shall be based upon the manufacturer's recommended testing procedure."  77 Ill. Admin. Code §510.60 (1997).

The State argues that given the applicability of the statute and regulation, the circuit court's decision was still manifestly erroneous.  The State argues that 
People v. Orth
, 124 Ill. 2d 326, 530 N.E.2d 210 (1988), notes the foundation requirement for breathalyzer results as (1) evidence that the breathalyzer test was performed according to standards adopted by the Illinois Department of Public Health, (2) evidence that the operator was certified by that department, (3) evidence that the machine was an approved model regularly tested for accuracy and properly working at the time of the test, (4) evidence that the defendant was observed for the required 20 minutes, and (5) evidence that the results of the machine's printout can be identified as the results of the test actually given to the particular defendant.  This explanation of standards is not challenged by defendant.  What is challenged is the failure to comply with the standard, particu­larly the requirements of the regulation of the Illinois Department of Public Health concerning the machine.  The State relies on 
People v. Kilpatrick
, 216 Ill. App. 3d 875, 576 N.E.2d 546 (1991), in which our colleagues on the Second District Appellate Court held, in the face of the statutory scheme and regulation requiring a certain margin of error, that a machine with a greater margin of error did not violate this requirement.  Specifically, the court held that although the State regulatory scheme requires a margin of error no greater than 0.01 and although a reading to two digits of .09 as in 
Kilpatrick
 resulted in a margin of error of .011, the machine nevertheless complied with the State regulations.  Specifically, 
Kilpatrick
 stated:

"[Dietmar] Grohlich [a toxicologist for the Department of Public Health] testi­fied that, based on his training and experi­ence, a margin of error of .01 means that a test result of .09, .10[,] or .11 would be accept­able.  In this case, the test results were .09 and .09, and the machine was certified as accurate.

Defendant argues that, based on Grohlich's testimony during cross-examination, it is `undisputed that the mathematical difference between [the] two values is .011.'  He contends that .011 is clearly greater than the .01 margin of error allowed by the regulation so the trial court's ruling must be affirmed.

We acknowledge that this is a compelling argument, one which was understandably accepted by the trial court.  We also can see the logic in the State's argument before the trial court that, because .09 does not necessarily equal .090, .09 cannot be accurately subtracted from .101 so that, to compare the two numbers, .101 must be considered .10.  We decline, however, to require courts to determine the relative merit of various mathematical theories and practice in order to determine if a breathalyzer machine has been properly certified.  This was not the intention of the legislature or the regulators.  For purposes of the narrow issue presented here, we hold that accuracy beyond two digits is not required by the regulations.  Therefore, where a breathalyzer machine tests a certified controlled reference sample and the result is .09, .10[,] or .11, the machine may be considered accurate within 
+
 0.01% as required by the relevant regulation and may be properly certified."  216 Ill. App. 3d at 882, 576 N.E.2d at 882.

In light of the specific language of the regulation of the Department of Public Health and the admonition by our supreme court in 
Orth
 that the regulations be followed, we respectfully decline to follow our colleagues' decision in 
Kilpatrick
.  It 
sub silentio
 establishes a standard of substantial compliance, rather than the strict compliance intended by the clear language of both the statute and the applicable regulation and endorsed by our supreme court in 
Orth
.  The failure of compliance is also aggra­vated in this case by the uncontested testimony that although the machine in question was capable of reading to three digits, the capacity for reading to three digits was never turned on.  We therefore have a similar mathematical discrepancy with a range above that allowed by the Department of Public Health regulation.

The record also sustains the court's order in relation to the failure to follow the manufacturer's regulations concerning the final air blank.  It is undisputed in the testimony in this record that the test sequence was blank, the test, and no air blank to follow, while the manufacturer's requirements were the three sequence tests, a blank, a test, and an air blank.  The language of the standards concerning both the sequence of testing and the manufacturer's recommendation and the margin of error are mandatory, and the breathalyzer test in the instant case failed on both.  See 
Orth
, 124 Ill. 2d 326, 530 N.E.2d 210; see also 
People v. Emrich
, 113 Ill. 2d 343, 498 N.E.2d 1140 (1986); 
People v. Hamilton
, 118 Ill. 2d 153, 514 N.E.2d 965 (1987).

For the reasons stated above, we conclude that the circuit court's order granting defendant's motion was not manifestly erroneous but rather followed the strict-compliance dictates of the applicable statute and regulations.

For the foregoing reasons, the opinion of the circuit court of Williamson County is affirmed.

Affirmed.

MAAG and HOPKINS, JJ., concur.