1 February 2000

No. 3–99–0158

IN THE 

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2000

THE PEOPLE OF THE STATE OF ) Appeal from the Circuit Court

ILLINOIS, ) for the 14th Judicial Circuit

) Whiteside County, Illinois

Plaintiff-Appellant, )

)

) No. 98–DT–220ST

)

DAVID L. CADY, ) Honorable 

) Dana McReynolds

Defendant-Appellee. ) Judge Presiding

JUSTICE KOEHLER delivered the opinion of the court:

The State appeals the Whiteside County circuit court's grant of defendant David L. Cady's motion 
in limine 
barring admission of the defendant's breath-analysis result.  This court must decide whether the circuit court erred when it concluded that the State had not met its burden to show that the breathalyzer unit used to test the defendant's breath had not been properly certified as accurate pursuant to the statute and applicable regulation.  See 625 ILCS 5/11–501.2(a)(1) (West 1998); 77 Ill. Adm. Code § 510.100(a) (1996).  Because we conclude that the State met its burden, we reverse and remand
.

I. FACTS

The State charged the defendant, David L. Cady, with two counts of driving under the influence of alcohol (DUI) after he agreed to take the requested breath test which produced a .11 result.  The first count charged that the defendant's alcohol concentration was greater than .08 (625 ILCS 5/11–501(a)(1) (West 1998)), and the second count charged the defendant with physical control of a vehicle while under the influence of alcohol (625 ILCS 5/11–501(a)(2) (West 1998)).  Prior to trial, the defendant moved 
in limine
 to bar the admission of his breath-analysis result.

At the hearing, Steven Denay, an Illinois state trooper, testified that he was licensed to certify breathalyzer machines and, on August 28, 1998, he performed a certification test on the Rock Falls police department's Intoximeter 3000 model breathalyzer machine using a wet simulator solution.  After the solution was properly heated, Denay did a standard check and connected the instrument to his simulator solution, typed in the codes, and proceeded to perform the standards check using the following codes: (1) .08 simulator solution, and (2) solution No. 98-175.  Denay testified that typing in the simulator solution value provided the machine with a target value.  Denay performed the test, and the machine registered a .07 external standard.  When Denay performed two other tests on the actual breath tube, the results were also .07.  On September 18, 1998, Denay again tested the machine and obtained identical results.  Denay used the same solution to test the Intoximeter 3000 both times.

Denay further testified that the Department of Public Health (Department) standard for an acceptable variance for testing the accuracy of breathalyzer machines is a plus or minus .01.  Any test that results in a greater or lesser variance than the accepted .01 means that the machine will not be certified as accurate.  The Intoximeter 3000 model does not provide for a certification greater than plus or minus .01.  Instead, it will read either high abort or low abort.

Denay produced the Department's certificate for solution No. 98-175, which indicated that the laboratory analysis found the value of the solution to be .081, a mean result obtained after performing several tests on the standard solution using an Intoxilyzer 5000.  Moreover, the certificate indicated and Denay testified that the Department had set the acceptable accuracy range as from .070 to .090 and the sample bottle he used when testing the Rock Falls breathalyzer unit was labeled as containing a 0.08 solution.

Ronald Henson next testified as an expert witness for the defendant.  He testified that the initial process when testing a breathalyzer machine for its accuracy requires identifying whether two or three digits are being used to perform the test.  He opined that a test using a simulator solution of .081 and producing a .07 result would not be in conformance with the Department's regulations.  Moreover, he testified that the Intoximeter 3000 could be calibrated to provide a third-digit reading.  Although Henson believed that a third-digit readout was relevant, he noted that the Department did not have a standard requiring a third-digit readout.  Further, Henson stated that the standard said .01 and it did not say two digits.  He additionally testified that the Intoximeter 3000 had a built-in safeguard to insure against improperly certifying the breathalyzer machine.  Accordingly, the machine would read low abort if it tested too low for the solution being used.  Henson testified that the breathalyzer machine does not round off any reading.  Rather, if the machine is set for a two-digit readout, it will give only a two-digit readout.

The circuit court noted two relevant cases (
People v. Morris
, 301 Ill. App. 3d 603, 703 N.E.2d 923 (1998); 
People v. Kilpatrick
, 216 Ill. App. 3d 875, 576 N.E.2d 546 (1991)), indicating that 
Morris
 favored granting the motion 
in limine
, while 
Kilpatrick
 did not, but both cases were decided prior to the legislature's recent reduction of the level of alcohol needed to establish impairment for a DUI offense.  The circuit court, therefore, determined that it must strictly interpret the statutes in light of the lesser burden on the State and granted the defendant's motion 
in limine
.  The State filed a certificate of impairment and now appeals.

II. ANALYSIS

Generally, an appellate court will not disturb the circuit court's decision to grant a motion 
in limine
 absent an abuse of discretion.  
Swick v. Liautaud
, 169 Ill. 2d 504, 521, 662 N.E.2d 1238, 1246 (1996).  However, the only issue before this court involves a question of law; therefore, our review is 
de novo.
  
People v. Carlson
, 185 Ill. 2d 546, 551, 708 N.E.2d 372, 374 (1999).

The State submits that the circuit court erred in accepting the defendant's contention that the Intoximeter 3000 breathalyzer machine had been improperly certified as accurate.  In so doing, the State asks this court to follow the second district's holding in 
People v. Kilpatrick
, 216 Ill. App. 3d 875, 576 N.E.2d 546 (1991), involving a nearly identical fact situation, where the second district concluded that the Department's regulation did not require accuracy beyond two digits.  Further, the State contends that although the breathalyzer machine can read three digits, this is of no consequence with respect to the machine's accuracy.  Since a breathalyzer machine does not round off the third digit, the third digit noted on the certificate of laboratory analysis should also be disregarded when certifying the accuracy of a breathalyzer machine.  Moreover, the State notes that the circuit court failed to explain the connection between its reliance on the legislature's recent decision to reduce the percentage of alcohol needed to be considered intoxicated and its decision to strictly construe the statute.  The State next criticized 
People v. Morris
, 301 Ill. App. 3d 603, 703 N.E.2d 923 (1998), a fifth district case also with nearly identical facts, because the fifth district, while refusing to follow 
Kilpatrick
, did not explain how 
Kilpatrick
 was wrongly decided.  Last, the State claims that, because the breathalyzer machine rounds a reading neither up nor down, the alleged .11 reading from the defendant's breathalyzer could not be any lower, only higher.  In sum, the State argues that, under these circumstances, the test produced a reliable result indicative of intoxication irrespective of the claimed error and the result should not be excluded from evidence.

Conversely, the defendant contends that this court must specifically address the factual question of whether .011 is higher than .01.  The defendant asserts that the answer clearly must be that .011 is greater than .01 when using the plain and ordinary meaning of the numbers.  Further, he argues that a variance of .011 is greater than the .01 variance permitted by statute.  Accordingly, the defendant asserts that the plain and ordinary meaning of the statute and the plain and ordinary meaning of the numbers combined indicate that the breathalyzer was not sufficiently accurate to produce results admissible in court.  Moreover, the defendant contends that 
Kilpatrick
 is not controlling in this district and, although 
Morris
 is not controlling either, 
Morris
 provides a different analysis, which this court should apply.  

In 
Kilpatrick
, the circuit court granted the defendant's motion 
in limine
 where the solution used to test the breathalyzer machine at issue had a recorded value of .101% W/V (weight of alcohol in the volume of the breadth), and the tests using this solution produced .09 and .09 results.  The circuit court concluded that the mathematical result derived from comparing the two numbers was " '.011 or eleven thousandths which is one thousandth greater than the acceptable margin of error.' "  
Kilpatrick
, 216 Ill. App. 3d at 880, 576 N.E.2d at 549.  On appeal, the second district reversed, concluding that "accuracy beyond two digits is not required by the [regulations]."  
Kilpatrick
, 216 Ill. App. 3d at 882, 576 N.E.2d at 551.

We agree with the second district's analysis in 
Kilpatrick
.  "The results of chemical tests are admissible in a criminal DUI prosecution only when there is compliance with section 11–501.2 of the [Illinois Vehicle] Code [citation] and the regulations promulgated thereunder."  
Kilpatrick
, 216 Ill. App. 3d at 880, 576 N.E.2d at 550.  

Section 11–501.2 provides in pertinent part:

"(a) Upon the trial of any civil or criminal action or proceeding ***, evidence of the concentration of alcohol *** in a person's blood, *** urine, 
breath
 or other bodily substance, shall be admissible.  Where such test is made the following provisions shall apply:

1. Chemical analyses of the person's blood, urine, 
breath
 or other bodily substance to be considered valid under the provisions of this Section 
shall have been performed according to standards promulgated by the Department of Public Health
 in consultation with the Department of State Police ***."  (Emphasis added.)  625 ILCS 5/11–501.2(a)(1) (West 1998).

Section 510.100(a) of the Illinois Administrative Code additionally provides:

"An instrument must be accurate 
within plus or minus 0.01 W/V to be certified
.  To determine accuracy of instruments, an inspector shall perform two analyses on a certified controlled reference sample at least once a month at intervals not to exceed 45 days.  The inspector shall record test results of his certification in the instrument logbook (See Appendix A of this Part).  The original certification test results will be retained by the inspector."  (Emphasis added.)  77 Ill. Adm. Code §510.100(a) (1995).

In 
People v. Orth
, 124 Ill. 2d 326, 340, 530 N.E.2d 210, 216-

17 (1988), our supreme court stated that the foundational requirements for the admission of a breath-analysis result include:

"(1) evidence that the tests were performed according to the uniform standard adopted by the Illinois Department of Public Health, (2) evidence that the operator administering the tests was certified by the Department of Public Health, (3) evidence that the machine used was a model approved by the Department of Health, was tested regularly for accuracy, and was working properly, (4) evidence that the motorist was observed for the requisite 20 minutes prior to the test and, during this period, the motorist did not smoke, regurgitate, or drink, and (5) evidence that the results appearing on the 'printout' sheet can be identified as the tests given to the motorist."

In giving the language of the regulation its plain and ordinary meaning, we determine that the acceptable margin of error on a breathalyzer machine is .01 and the statutory scheme throughout accounts for this margin of error.  
Kilpatrick
, 216 Ill. App. 3d at 881-82, 576 N.E.2d at 551.  Moreover, the regulatory scheme does not require accuracy beyond +.01 to -.01.  
Kilpatrick
, 216 Ill. App. 3d at 882, 576 N.E.2d at 551.  In the instant case, the Department set the acceptable range between .070 and .090, and, accordingly, the .07 result fell within this range.  Although it is undisputed that the mathematical difference between .081 and .07 is .011, under these circumstances, .07 cannot be accurately subtracted from .081 since .07 does not necessarily equal .070.  See 
Kilpatrick
, 216 Ill. App. 3d at 882, 576 N.E.2d at 551.  Hence, because this court declines to determine the relative merit of mathematical theories in determining whether a breathalyzer machine has been properly certified, we conclude that the regulations do not require accuracy beyond two digits.  See 
Kilpatrick
, 216 Ill. App. 3d at 882, 576 N.E.2d at 551.  Therefore, we conclude the machine at issue here was accurately certified when its test results fell within the range of .07 to .09 and its ability to yield a three-digit result does not affect our decision.  See 
Kilpatrick
, 216 Ill. App. 3d at 882, 576 N.E.2d at 551.  Accordingly, we conclude that the State met its burden of proving that the machine at issue was certified accurate within plus or minus .01 W/V.  

III. CONCLUSION

In sum, we conclude that the circuit court erred when it determined that the State had not met its burden to prove that the breath-analysis machine used to test the defendant's breath was properly certified as accurate when the test results fell within plus or minus .01 W/V.  In so doing, we determined that the regulations at issue do not require accuracy beyond two digits.  Accordingly, we reverse and remand this case for action consistent with our opinion.

Reversed and remanded.

SLATER, P.J., and LYTTON, J. concur.