THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. SHIRLEY DUNNIGAN, Defendant-Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. TIMOTHY SWORM *et al.*, Defendants-Appellees.

Fifth District    Nos. 5—99—0242, 5—99—0277 cons.

Opinion filed April 20, 2000.—Rehearing denied on No. 5—99—0277 May 23, 2000.

Brian Trentman, State's Attorney, of Nashville, and Charles Garnati, State's Attorney, of Marion (Norbert J. Goetten, Stephen E. Norris, Patrick D. Daly, and Kendra S. Mitchell, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

David N. Rumley, of Savoy, for appellee Shirley Dunnigan.

Therese H. Thien, of Marion, for appellee Oren Peoples.

Julie A. Thompson, of Verity & Thompson, of Marion, for appellee William Deaton.

John D. Richey, of Marion, for appellees Chester Rollins, Jerry Risley, and Gerald Davis.

JUSTICE RARICK delivered the opinion of the court:

Each of the defendants involved in these two cases was charged with driving under the influence of alcohol. Each filed a motion to exclude or suppress the results of his or her breathalyzer exam, based on *People v. Morris*, 301 Ill. App. 3d 603, 703 N.E.2d 923 (1998), alleging that the instrument used to test their breath, the Intoxilyzer 5000, was not operated in conformity with the Illinois Administrative Code. In each instance, the defendant's motion was granted. The State appeals, contending the trial court erred in excluding and suppressing the test results. We agree and therefore reverse.

■ In *People v. Orth*, 124 Ill. 2d 326, 530 N.E.2d 210 (1988), our supreme court stated that the foundational requirements for the admission of a breath-analysis result include:

"(1) evidence that the tests were performed according to the uniform standard adopted by the Illinois Department of Public Health, (2) evidence that the operator administering the tests was certified by the Department of Public Health, (3) evidence that the machine used was a model approved by the Department of Health, was tested regularly for accuracy, and was working properly, (4) evidence that the motorist was observed for the requisite 20 minutes prior to the test and, during this period, the motorist did not smoke, regurgitate, or drink, and (5) evidence that the results appearing on the 'printout' sheet can be identified as the tests given to the motorist." 124 Ill. 2d at 340, 530 N.E.2d at 216-17.

At the hearings on defendants' motions, the State presented the testimony of Larry Etzkorn, the division chief for health care regula-

tion public services for the Illinois Department of Public Health. Mr. Etzkorn was the draft author of the regulations regarding the approval and certification of breathalyzer machines. His responsibilities also included determining whether or not an instrument such as the Intoxilyzer 5000 should be approved for use by the Department of Public Health. Mr. Etzkorn, accepted as an expert witness on matters pertaining to breath analysis and the Intoxilyzer 5000 machine, testified that during every breath test the Intoxilyzer 5000 will run an "internal standard" with that standard set at .01. If the instrument should deviate during the testing cycle in excess of .01, the test cycle or breath test will be aborted automatically. He further stated that after performing hundreds of tests on the machine with the third digit turned on, analysis of the resulting data showed that the probability of the existence of the hypothetical situation which prompted the decision in *Morris*, namely, that a mathematical discrepancy with a range above that allowed by the regulations (plus or minus 0.01), was so small as to be nonexistent. He further testified that when the third digit of the instrument is turned off, it is simply truncated and does not influence the second digit at all. According to Mr. Etzkorn, there is no manufacturer recommendation with regard to the use of a third digit, and the standard procedure for the Department of Public Health has always been using two digits to the right of the decimal point on the instruments. Mr. Etzkorn also explained that the *Morris* decision was based upon a false premise that the sample solution was certified as 0.101 rather than in reality being certified at 0.10 plus or minus 0.01. Without the false premise, Mr. Etzkorn concluded that the *Morris* assumption of a test higher than the acceptable margin of error could not exist. With regard to the second air blank, Mr. Etzkorn testified that neither the regulations nor the operating manual for the Intoxilyzer 5000 requires that the second air blank be printed. According to Mr. Etzkorn, the machine automatically performs the second air blank even though the result is not printed. If the second air blank is not done, no test result will be printed. Mr. Etzkorn explained that the purpose of the second air blank is not to detect interferant that could influence a test result but rather to purge the machine of the corrosive effect of alcohol on the instrument.

◼ Looking at the plain language of the regulations, the acceptable margin of error on a breathalyzer machine is plus or minus .01. See 77 Ill. Adm. Code § 510.100(a) (1995); *People v. Cady*, 311 Ill. App. 3d 348, 353 (2000). The entire regulatory scheme does not require accuracy beyond plus or minus .01. We, too, decline to determine the relative merit of mathematical theories in determining whether a breathalyzer machine has been properly certified, and we conclude

that the regulations do not require accuracy beyond two digits. See *Cady*, 311 Ill. App. 3d at 353. In contrast to our holding in *Morris* where such evidence was lacking, we conclude that in these instances the State met its burden of proving that the machines at issue were certified accurate within plus or minus .01, and their ability to yield a three-digit result therefore is irrelevant. See *Cady*, 311 Ill. App. 3d at 353. Accordingly, the circuit court erred in ruling that the State had not met its burden and further erred in excluding and suppressing the results of defendants' breath tests.

We therefore reverse and remand these causes for further proceedings consistent with this disposition.

Reversed; cause remanded.

WELCH and CHAPMAN, JJ., concur.