1-00-0251) FOURTH DIVISION

1-00-0252) JUNE 28, 2001

1-00-0253)

1-00-0256)

1-00-0257)

1-00-0258)

1-00-0259)

1-00-0897) Cons.

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County.

)

)

) No. Y8017303

DAVID LARSEN, GREGORY MURPHY, JOSEPH )

CHESLAK, MATTHEW KOLLIOS, JESSE )

CASTILLO, WALTER STERNBERG, JASON KOMIS,) Honorable

and LESLIE MAJORS, ) Nicholas T. Pomaro &

) Martin McDonough,

Defendants-Appellees. ) Judges Presiding.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

The State appeals the circuit court's grant of motions 
in
 
limine
 made by 
defendants David Larsen, Gregory Murphy, Joseph Cheslak, Matthew Kollios, Jesse Castillo, Walter Sternberg, Jason Komis, and Leslie Majors
 barring admission of the results of defendants' breathalyzer tests at trial.  The State filed Supreme Court Rule 604(a)(1) (145 Ill. 2d R. 604(a)(1)) certificates of substantial impairment in each case.  The sole issue raised by the State on appeal is whether the court properly excluded evidence of the breathalyzer tests based on the alleged improper certification of the breathalyzer machines, in each of the consolidated cases.

Each defendant was charged with driving while under the influence of alcohol in violation of section 11-501(a)(2) of the Illinois Vehicle Code (the Code) (625 ILCS 5/11-501(a)(2) (West 1998)) and driving while under the influence of alcohol with an alcohol concentration of .08 or more in violation of section 11-501(a)(1) of the Code (615 ILCS 11-501(a)(1) (West 1998)).  While in custody, each defendant submitted to a breathalyzer test, conducted on an Intoxilyzer 5000 machine, which resulted in breath alcohol concentrations (BAC) in excess of .08.
(footnote: 1)  Each defendant moved 
in
 
limine
 to exclude the results of his breathalyzer test based on 
People v. Morris
, 301 Ill. App. 3d 603, 703 N.E.2d 923 (1998) (
Morris
), alleging that the machines used to administer the tests were not in compliance with Illinois Department of Public Health (the Department) regulations.

The cases of defendants Larsen, Murphy, Cheslak, Kollios, Castillo, Sternberg, and Komis were consolidated for purposes of an evidentiary hearing on the motions 
in
 
limine
.  

The State presented the testimony of Larry Etzkorn, the division chief for the alcohol and substance testing program for the Department.  Etzkorn described how the machines in the field were tested monthly for accuracy, in compliance with Department regulations.  Using a certified controlled reference solution (solution), inspectors would run the accuracy test twice and if the results of each test fell within the plus or minus .01 standard the machine was certified as accurate.  Etzkorn explained that the solution is constituted of ethanol and water, created at either the State Police laboratory or the Department laboratory.  Once a batch of the solution was created, it was tested by gas chromatograph to establish the appropriate value.  Both the State Police and the Department used a .08 solution.  The Department cross-checked the solution on either an Intoxilyzer 3000 or 5000, but both the Department and the State Police certified the solutions based only on the gas chromatograph reading.  According to Etzkorn, the Department regulations refer to only two digits to the right of the decimal point, in regard to both the subject test results and the certification of machines.  Prior to March 1, 1999, the breathalyzer machines in Illinois were set to only two digits.  After that date, he issued a directive to the inspectors to include the third digit because of his inability to testify at the increasing number of trials throughout the state in defense of the machines.  
He explained that the machine truncates any digits beyond the first two and does not round up to the next number. 

The parties stipulated to the test result evidence, involving each defendant.

According to the Department, each solution used to test the machines was certified as .08 plus or minus .01, the .07 test results thereby coming within the appropriate range and the machines, therefore, were properly certified. 

Ronald Henson testified as an expert witness on behalf of defendants.  According to Henson, batch 98-175 of the certified controlled reference solution, which was used to test the machine in Murphy's case, had a value of .096 when run on the gas chromatograph.  The Department cross-referenced that solution on the Intoxilyzer 5000 and obtained a reading of .081.  In Henson's opinion, a problem arose because a solution with a value of .081 was used to certify the machine and the machine's test result was .07.  Without identifying the third digit on the test result and, assuming the third digit was zero (it could be any number from 0 to 9), simple arithmetic indicates that the result is a .011 variance (.081-.070=.011), which is a higher figure than Department regulations allow.  He concluded that with regard to Murphy, there was no way to ascertain whether the test was within the .01 variance allowed by the Department regulation, because the test was not reported to the third digit.

Henson extended his theory to the other defendants' despite the fact that batch 98-175 solution was not used to certify the machines in those cases.  According to Henson, the variance in the other defendants' cases would be even higher than that in Murphy's case because the gas chromatograph values obtained in the other defendants' cases ranged from .097 to .099, resulting in a reading in the Intoxilyzer 5000 greater than .081.
(footnote: 2)  He concluded that where the test results were not reported to the third digit, it was not possible to draw a conclusion that the tests met the plus or minus .01 standard.  In his opinion, defendants' breath tests did not comply with the standard required by the Department.        

Etzkorn testified that he conducted an epidemiological study of the third digit issue, from March 1999 through June 1999, where he gathered all the information coming from the field using the standard reports which are collected from inspectors, and he reviewed the third digit values that were displayed on the certification ticket.  In 1,010 test samples, a test inaccuracy or certification that exceeded .01 never occurred.  He found that the range of the tests were from a .006 positive to a .009 negative from the known solution.  In response to questioning by the circuit court, Etzkorn admitted that it was mathematically possible for a variance of greater than .01 to occur, but that "[w]e are talking somewhere out in the one in a million, one in a billion theory."  In his opinion, all the breath test certifications and machines in these cases were appropriately certified as accurate and were in compliance with the Department regulations and the Code.         

Etzkorn explained that the 
Morris
 decision was based on a false premise that the sample solution was certified as .101.  He explained that neither the Department nor the State Police have ever certified a solution other than a .10 plus or minus .01, or in the present cases, .08 plus or minus .01.  

The circuit court granted defendants' motions 
in
 
limine
.  The State's appeal followed.

Prior to his trial, Majors orally moved 
in
 
limine
 to exclude the results of his breathalyzer test based upon 
Morris
.  The circuit court granted his motion
 without an evidentiary hearing.  The State filed a certificate of impairment and a timely notice of appeal in this case as well.

I

Generally, a circuit court's decision to grant a motion 
in
 
limine
 will not be reversed absent an abuse of discretion; where, as in the present case, the only issue before the reviewing court involves a question of law, review is 
de
 
novo
.  
People v. Cady
, 311 Ill. App. 3d 348, 724 N.E.2d 549 (2000) (
Cady
).

The results of chemical tests in cases involving driving under the influence are admissible only when there is compliance with section 11-501.2 of the Code and the regulations promulgated thereunder.  
People v. Kilpatrick
, 216 Ill. App. 3d 875, 576 N.E.2d 546 (1991) (
Kilpatrick
).  Section 11-501.2(a)(1) prescribes that chemical tests "to be considered valid *** shall have been performed according to standards promulgated by the Department of Public Health in consultation with the Department of State Police."  625 ILCS 5/11-501.2(a)(1) (West 1998).  

Section 510.100(a) of the Illinois Administrative Code provides:

"An instrument must be accurate within plus or minus 0.01 W/V to be certified.  To determine accuracy of instruments, an inspector shall perform two analyses on a certified controlled reference   sample at least once a month at intervals not to exceed 45 days.  The inspector   shall record test results of his certification in the instrument logbook ***.  The original certification test results will be retained by the inspector."  77 Ill. Admin. Code §510.100(a) (1995)

According to the supreme court, the foundational requirements for admission of breathalyzer results include evidence that: (1) the tests were performed according to the uniform standard adopted by the Department; (2) the operator administering the tests was certified by the Department; (3) the machine used was a model approved by the Department, was tested regularly for accuracy, and was working properly; (4) the motorist was observed for the requisite 20 minutes prior to the test and, during this period, the motorist did not smoke, regurgitate, or drink; and (5) the results appearing on the printout sheet can be identified as the tests given to the motorist.  
People v. Orth
, 124 Ill. 2d 326, 530 N.E.2d 210 (1988).

The principal issue here is whether the machines were properly certified where the test results were not reported three digits to the right of the decimal point.  This district has never addressed this issue; however, the second, third, and fifth districts have found that the regulations do not require accuracy beyond two digits.

In 
Kilpatrick
, the second district considered a nearly identical fact situation.  The circuit court granted defendant's motion 
in
 
limine
 to exclude breathalyzer results where the solution used to test the machine had a recorded value of .101% W/V (weight of alcohol in the volume of the breath), and the two tests using that solution produced results of .09 and .09.  The circuit court concluded that the mathematical result derived from comparing the two numbers was ".011 or eleven thousandths which is one thousandth greater than the acceptable margin of error."  
Kilpatrick
, 216 Ill. App. 3d at 880.  The second district reversed, noting that in giving the language of the regulation its plain and ordinary meaning, the acceptable margin of error on a breathalyzer machine was .01.  Moreover, the regulatory scheme did not require accuracy beyond +.01 to -.01.  The court declined to determine the relative merit of mathematical theories in determining whether a breathalyzer machine has been properly certified because "the regulations do not require accuracy beyond two digits."  
Kilpatrick
, 216 Ill. App. 3d at 882.  See also 
People v. Cady
, 311 Ill. App. 3d 348, 724 N.E.2d 549 (3
rd
 Dist. 2000) (
Cady
).

Defendants rely on 
Morris
, in which the fifth district, when faced with a nearly identical factual situation, declined to follow 
Kilpatrick
, and affirmed the grant of defendant's motion 
in
 
limine
 to exclude breathalyzer results.  The fifth district did not expressly overrule 
Morris
, but has since retreated from its holding in that case.  In 
People v. Dunnigan
, 312 Ill. App. 3d 1186, 728 N.E.2d 122 (5
th
 Dist. 2000), after reading the testimony of Etzkorn, the fifth district followed
 
Cady
 and concluded that the regulations did not require accuracy beyond two digits.
  In light of Etzkorn's testimony, the court held that the State met its burden of proving that the machines were properly certified.

The present case cannot be distinguished materially from 
Kilpatrick
, 
Cady
, and 
Dunnigan
; consequently, the circuit court erred in granting defendants' motions 
in
 
limine
.

Accordingly, for the reasons set forth above, the judgments of the circuit court of Cook County are reversed and the cause is remanded for further proceedings.

Reversed and remanded with directions.

HOFFMAN and BARTH, JJ., concur. 
     

FOOTNOTES
1:
The defendants' BACs were as follows: Larsen - .22; Murphy - .19; Kollios - .16; Castillo - .17; Komis - .11; Sternberg - .17; Cheslak - .16; Majors - .25.

2:
No cross-reference on the Intoxilyzer 5000 was done for these values.