# Illinois Official Reports

## Appellate Court

**_Schandelmeier-Bartels v. Chicago Park District_, 2015 IL App (1st) 133356**

| | |
|---|---|
| Appellate Court Caption | CATHLEEN SCHANDELMEIER-BARTELS, Plaintiff-Appellant, v. THE CHICAGO PARK DISTRICT, Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-3356 |
| Filed | January 23, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where a Caucasian employee of the Chicago park district was terminated from her position after reporting an incident of child abuse involving an African-American family to the Department of Children and Family Services and she then filed a complaint for racial discrimination and retaliatory discharge in the federal district court, but the district court declined to exercise jurisdiction over the state-law retaliatory discharge claim and began proceedings that resulted in an award of compensatory damages for plaintiff in the amount of $30,000, and meanwhile plaintiff had refiled her retaliatory discharge claim in the state court, collateral estoppel prevented plaintiff from seeking compensatory damages in that case when she had already recovered identical damages in her federal case. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-L-13703; the Hon. Patrick F. Lustig, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Kent D. Sinson, of Sinson & Sinson, Ltd., and David Hemenway, of David A. Hemenway, P.C., both of Chicago, for appellant. |
| | |
| | Nelson A. Brown, Jr., and Sydney Weathersby, both of Chicago Park District, of Chicago, for appellee. |
| | |
| Panel | JUSTICE GORDON delivered the judgment of the court, with opinion.<br>Justices McBride and Reyes concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff Cathleen Schandelmeier-Bartels was terminated from her employment with the defendant Chicago Park District (Park District) after reporting an allegation of abuse to the Department of Children and Family Services (DCFS). Plaintiff, who is Caucasian, claimed that her termination was racially motivated since she was terminated by her African-American supervisor after reporting an incident that involved an African-American family. Plaintiff filed a complaint in federal court for racial discrimination and retaliatory discharge. The federal district court declined to exercise supplemental jurisdiction over the state-law retaliatory discharge claim but proceeded with the racial discrimination case, and plaintiff refiled her retaliatory discharge claim in state court.

¶ 2    After a jury trial on her federal racial discrimination claim, plaintiff was awarded $200,000 in compensatory damages. The federal district court granted the Park District's motion for judgment as a matter of law (judgment notwithstanding the verdict), and plaintiff appealed to the Seventh Circuit. The Seventh Circuit reversed and reinstated the jury verdict, but remitted the award to $30,000.

¶ 3    After the federal award, the Park District filed a motion *in limine* in the state-court case, asking the circuit court to find that plaintiff could recover no damages for her retaliatory discharge claim in light of the recovery for the federal racial discrimination claim. The circuit court found that plaintiff was precluded from recovering any damages for her retaliatory discharge claim on the basis of *res judicata* and granted the Park District's motion *in limine*. The circuit court then entered judgment in favor of the Park District. Plaintiff appeals, and we affirm.

¶ 4                                    BACKGROUND
¶ 5                    I. Plaintiff's Discharge From the Park District
¶ 6    We take the facts leading to plaintiff's discharge from the Seventh Circuit's opinion in *Schandelmeier-Bartels v. Chicago Park District*, 634 F.3d 372, 376-78 (7th Cir. 2011), as do the parties in their briefs.

¶ 7    On April 23, 2006, plaintiff began working at the Park District as cultural coordinator for the South Shore Cultural Center, which involved her being responsible for supervising the cultural center's after-school program and summer camp. Her duties included creating and

adhering to a program schedule, following program rotations, documenting all incidents involving children, and supervising children and staff.

¶ 8    On July 31, 2006, J.J., an African-American child, was suspended from summer camp for misbehavior, and his aunt came to pick him up. While J.J. and his aunt were in another room, plaintiff heard the sound of flesh being struck and a child screaming. Plaintiff followed the sounds and observed J.J.'s aunt kneeling over him with her arm raised above her head and a belt looped in her hand. J.J. had a welt on his arm and was crying. Plaintiff ordered J.J.'s aunt to stop, and J.J. and his aunt left the cultural center.

¶ 9    Plaintiff, who is Caucasian, reported the incident to her immediate supervisor, Andrea Adams, who is African-American. Adams explained that the J.J. incident was " 'a cultural thing,' " because " 'this is the way we discipline children in our culture' "; plaintiff assumed that Adams was referring to African-American culture. Plaintiff asked Adams what she should do, and Adams informed plaintiff that under Illinois law, if plaintiff believed she had observed child abuse, she was obligated to report it to DCFS. However, since Adams had not witnessed the incident, she informed plaintiff that it would be plaintiff's decision whether or not to report the incident. That night, plaintiff reported the incident to DCFS and was informed that she should call the police to perform a well-being check, which plaintiff did the next morning.

¶ 10   During the morning of August 1, Adams called plaintiff into her office, where J.J.'s aunt was present. Adams confronted plaintiff about sending the police to the aunt's home, and plaintiff explained her actions. When Adams learned that plaintiff had not actually observed the aunt's belt connect with J.J.'s flesh, Adams " 'went ballistic.' " Adams again told plaintiff that it was a cultural difference that plaintiff did not understand, and when plaintiff told Adams that her black friends did not beat their children, Adams responded, '[Y]our friends who are black tell you that they don't beat their children and then they go home and beat their children.' " Adams ordered plaintiff to leave her office, telling plaintiff that she " '[could not] stand the sight of' " her.

¶ 11   Adams then wrote a memo to the director of lakefront operations of the Park District and copied her immediate supervisor, detailing plaintiff's poor performance at her employment. Adams then recounted the " 'J.J. incident,' " which she called " 'the last straw.' " Adams concluded the memo by saying that " '[s]omething has to give.' " The same day, the Park District's human resources director drafted a letter terminating plaintiff's employment. At 6 p.m. on August 1, Adams and her supervisor delivered the termination letter to plaintiff, terminating her employment immediately.

¶ 12                                    II. Federal-Court Action

¶ 13   Plaintiff filed a complaint in federal court, alleging, *inter alia*, "reverse race discrimination" in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-2(a) (2006)), and a state common-law claim for retaliatory discharge.[1] The district

---

[1]The federal complaint is not included in the record on appeal. We draw the facts concerning the procedural posture of the federal case largely from the Seventh Circuit opinion, as well as rulings made by the federal district court in *Schandelmeier-Bartels v. Chicago Park District*, No. 07 CV 922, 2008 WL 4855649 (N.D. Ill. Nov. 7, 2008), and *Schandelmeier-Bartels v. Chicago Park District*, No. 07 CV 922, 2009 WL 2916858 (N.D. Ill. Sept. 2, 2009).

- 3 -

court denied the Park District's motion for summary judgment on plaintiff's state-law retaliatory discharge claim on November 7, 2008. However, on November 17, 2008, the district court granted plaintiff's motion to clarify the November 7 order and ordered it "modified to render no decision as to Count X [the state-law claim] and to advise that the Court declines to exercise supplemental jurisdiction over Plaintiff's tenth cause of action for the Illinois common law tort of retaliatory discharge pursuant to 28 U.S.C. §§ 1367(c)(1)-(2), because the state law claim substantially predominates over the claims over which the Court has original jurisdiction, because it raises a novel or complex issue of state law, and because it would require the Court to address facts and issues irrelevant to the federal claims."

¶ 14        Plaintiff's racial discrimination claims proceeded to trial and, on March 5, 2009, the jury returned a verdict in favor of plaintiff, finding that plaintiff "prove[d] by a preponderance of the evidence that she was terminated by the Chicago Park District because of her race" and awarding her compensatory damages in the amount of $200,000.[2] The jury instruction concerning damages stated:

> "You may award compensatory damages only for injuries that Ms. Schandelmeier-Bartels has proved by a preponderance of the evidence were caused by the Chicago Park District's wrongful conduct.
>
> Your award must be based on evidence and not speculation or guesswork. This does not mean, however, that compensatory damages are restricted to the actual loss of money; they include both the mental and physical aspects of the injury, even if they are not easy to measure.
>
> In calculating damages, you should not consider the issue of lost wages and benefits. The court will calculate and determine any damages for past or future lost wages and benefits. You should consider the following type of compensatory damages, and no others:
>
>> The mental and/or emotional pain that Ms. Schandelmeier-Bartels has experienced. No evidence of the dollar value of mental and/or emotional pain and suffering has been or needs to be introduced. There is no exact standard for setting the damages to be awarded on account of pain and suffering. You are to determine an amount that will fairly compensate Ms. Schandelmeier-Bartels for the injury, if any, that she sustained."

When arguing before the jury, plaintiff's attorney did not include "loss of normal life" as an element of plaintiff's compensatory damages that should be awarded, nor does plaintiff claim that she tendered a jury instruction that was rejected concerning loss of normal life. "Loss of a normal life" is defined as "the temporary or permanent diminished ability to enjoy life. This includes a person's inability to pursue the pleasurable aspects of life." Illinois Pattern Jury Instructions, Civil, No. 30.04.02 (2008).

¶ 15        After the verdict, the Park District filed a posttrial motion for judgment as a matter of law (judgment notwithstanding the verdict) pursuant to Rule 50 of the Federal Rules of Civil Procedure (Fed. R. Civ. P. 50), which the district court granted on September 2, 2009, finding for the Park District. Plaintiff appealed, and the Seventh Circuit reversed, reinstating the jury verdict for plaintiff. However, the Seventh Circuit ordered a remittitur and reduced

---

[2]Plaintiff was also awarded $51,702 in front and back pay, as well as costs and attorney fees. These awards are not at issue in the instant case, as plaintiff is not seeking them in her state-law case.

the damages to $30,000, finding that "[i]n the absence of stronger evidence of long-lasting emotional harm to plaintiff, and even giving due deference to the jury's determination," an award higher than $30,000 "on this record would be unreasonable."[3] *Schandelmeier-Bartels*, 634 F.3d at 391.

¶ 16                             III. State-Court Action

¶ 17     Shortly after the federal district court declined to exercise supplemental jurisdiction over her retaliatory discharge claim, plaintiff filed a complaint for retaliatory discharge against the Park District, alleging that she was terminated from her employment for reporting suspected child abuse to the DCFS abuse and neglect hotline and to the Chicago police department; plaintiff later filed a verified amended complaint.

¶ 18     The Park District's answer to the verified amended complaint included, as an affirmative defense, the argument that plaintiff's claim was barred by collateral estoppel as she had already "received all the damages in the federal case that she could possibly receive in her common-law claim" for retaliatory discharge.

¶ 19     On May 24, 2011, the Park District filed a motion for summary judgment, arguing that summary judgment was appropriate because, based on collateral estoppel, "[s]he cannot state a prima facie case [for common-law retaliatory discharge] because under the legal principle of no double recovery for wrongs arising out of one indivisible set of facts, she now has no further claim for damages, and without a claim for damages, she cannot establish a prima facie case."

¶ 20     On October 20, 2011, the circuit court entered an order denying the Park District's motion for summary judgment, finding that given the lack of finality of the federal case,[4] "it would be inappropriate to interpret the federal litigation to preclude litigation in the state court." On April 6, 2012, the circuit court denied the Park District's motion for reconsideration in light of the conclusion of the federal case.

¶ 21     On July 31, 2013, the Park District filed "Defendant Chicago Park District's Motion in Limine No. 3 to Bar Plaintiff's Recovery of Damages From Emotional Distress Because She Received All These Damages in Her Federal Case." In the motion, the Park District asked the court to prevent plaintiff "from seeking two recoveries for emotional distress in her common-law retaliatory discharge case because she has already received all the emotional distress damages to which she was entitled in her federal reverse-discrimination case." The Park District argued that by prevailing on her claim in federal court, collateral estoppel prevented plaintiff from bringing a second claim for compensatory damages for emotional distress in the state-court action.

¶ 22     On September 12, 2013, plaintiff filed a response to the Park District's motion *in limine*, arguing that "[n]o judge or jury has ever considered Plaintiff's retaliatory discharge claim, nor assessed the damages she sustained under the standards applicable to state law retaliatory discharge claims."

---

[3]The court noted that, normally, the issue would be remanded to the district court. However, given the fact that the judge who presided over the trial had since retired, the court found that it was situated "at least as well as a newly-assigned district judge would be to make this decision." *Schandelmeier-Bartels*, 634 F.3d at 391.

[4]The order referred to "certain yet unresolved elements of damage."

¶ 23        On October 9, 2013, the parties came before the circuit court on the Park District's motion *in limine*. After hearing argument from both sides, the court noted:

> "I believe that the judgment that you got in federal court bars–I mean, it's like res judicata here. You got a final judgment on the merits in federal court. You had the same cause of action. It's all the same operative core set of facts. The parties are both the same. You had different theories, but you don't get damage for each theory when they all arise out of the same core set of facts, at least that's–you know, I may be wrong. I don't think I am, but I think to grant this motion at this point, and if I'm right, then I have saved a lot of time and resources for both the Plaintiff, the Defense, and the courts, and if I'm wrong, then this issue is taken care of, and then you are back, and you can try the case, but I think to have everybody go through a trial in a case like this where I think the damages are the same, would be an error on my part."

The court then recited the elements of *res judicata*, noting that, as to the requirement of a final judgment on the merits:

> "[T]he federal court entered a judgment for the Plaintiff on reverse race discrimination and awarded damages for emotional distress and lost wages. *** The jury awarded damages for the Plaintiff for emotional distress, and even though the federal court reduced the amount of emotional distress damages, the final judgment was entered for the Plaintiff versus the Defendant on that core set of facts.
>
>       The final judgment made on the merits is conclusive as to rights of the parties and constitutes an absolute bar to subsequent action involving the same cause of action. It's the same cause of action. It's just different theories, the way I look at it. One theory is race discrimination. One is retaliatory discharge.
>
>       So the doctrine of res judicata applies not only to issues that were raised, but that could have been raised as well in the federal court. The jury's verdict in the federal court was for Plaintiff's emotional distress, which is the same damage that the Plaintiff would seek recovery for in the state court action.
>
>       The Plaintiff's testimony regarding the emotional distress would be exactly the same in the state court as it was in the federal court case. Even through the elements of each of these theories may be different, the damages are the same."

Regarding the requirement for identity of cause of action, the court stated:

> "As to the second element for res judicata, identity of the causes of action, while one group of facts may give rise to a number of different theories of recovery, there remains only a single cause of action. ***
>
>       In this case it all boils down to the damages, and while I know your elements are going to be different, the damages, you can't separate what her damages are[,] I don't think[,] from the race discrimination from the retaliatory discharge.
>
>       So no matter how many alternative theories you might have had out of this firing, you would still remain–it's still one cause of action and one award of damages for emotional distress, and I do think if both these theories proceeded in the same court, you wouldn't get emotional distress damages for each one."

Accordingly, the circuit court entered an order granting the Park District's motion *in limine* preventing the recovery of emotional damages. The order also stated that, "[b]ased on the ruling on motion in limine No. 3, the plaintiff cannot obtain damages, which is a critical

- 6 -

element in the cause of action" and, accordingly, entered judgment in the Park District's favor. This appeal follows.

ANALYSIS

On appeal, plaintiff argues that the circuit court erred in finding that *res judicata* barred plaintiff from recovering compensatory damages in her state-law case and further argues that even under the narrower doctrine of collateral estoppel, she should be permitted to proceed with her claim. "Generally, we review a trial court's decision on a motion *in limine* for an abuse of discretion; however, where, as in this case, the only issue before the court involves a question of law, the standard of review is *de novo*." *People v. Armbrust*, 2011 IL App (2d) 100955, ¶ 6 (citing *People v. Larsen*, 323 Ill. App. 3d 1022, 1026 (2001)); see also *Forest Preserve District v. First National Bank of Franklin Park*, 401 Ill. App. 3d 966, 976 (2010) ("Because this is a purely legal issue centering on statutory interpretation, we review *de novo* the trial court's decision to grant motion *in limine* No. 1."); *People v. Hanson*, 238 Ill. 2d 74, 96 (2010) (noting that while a motion *in limine* is reviewed for an abuse of discretion, the issues in the case were questions of law to be reviewed *de novo*). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

I. *Res Judicata*

The first issue we consider is whether the trial court properly found that *res judicata* barred plaintiff from recovering compensatory damages. " 'The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action.' " *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008) (quoting *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334 (1996)). *Res judicata* bars relitigation of matters that were actually decided in the first lawsuit, as well as matters that could have been decided in that suit. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302 (1998). Three requirements must be satisfied for *res judicata* to apply: (1) a final judgment on the merits has been reached by a court of competent jurisdiction; (2) an identity of cause of action exists; and (3) the parties or their privies are identical in both actions. *Hudson*, 228 Ill. 2d at 467 (citing *Downing v. Chicago Transit Authority*, 162 Ill. 2d 70, 73-74 (1994)). In order to determine whether there is an identity of cause of action, courts apply the "transactional test." *River Park*, 184 Ill. 2d at 311. "[P]ursuant to the transactional analysis, separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park*, 184 Ill. 2d at 311.

In the case at bar, we agree with plaintiff that *res judicata* does not apply to bar her state-law claim for retaliatory discharge. Our supreme court has addressed the identical issue in *Nowak v. St. Rita High School*, 197 Ill. 2d 381 (2001), and its decision controls here. In *Nowak*, the plaintiff filed a complaint in federal court over his termination from the defendant high school, seeking recovery under the federal Americans with Disabilities Act of 1990 (the ADA) (42 U.S.C. § 12101 *et seq.* (1994)), as well as raising a state claim for breach of his employment contract. *Nowak*, 197 Ill. 2d at 385. The district court granted summary judgment in favor of the defendant on the ADA claim, and declined to asset

jurisdiction over the state claim, dismissing it " 'for lack of jurisdiction.' " *Nowak*, 197 Ill. 2d at 385. After the state claim was dismissed, the plaintiff refiled the claim in the circuit court of Cook County. *Nowak*, 197 Ill. 2d at 387. The circuit court dismissed two counts of the complaint with prejudice and entered summary judgment in favor of the defendant on the remaining two counts. *Nowak*, 197 Ill. 2d at 387. The plaintiff appealed, and the appellate court reversed the dismissal of one of the counts of the plaintiff's complaint. *Nowak*, 197 Ill. 2d at 387.

¶ 29    Before the supreme court, one of the defendant's arguments was that the doctrine of *res judicata* barred the plaintiff's claim. *Nowak*, 197 Ill. 2d at 389. The supreme court disagreed, noting that "[u]nder Illinois law, the dismissal of a complaint for failure to state a claim is an adjudication on the merits, while the dismissal of a complaint for lack of subject matter jurisdiction is not considered a decision on the merits of the complaint." *Nowak*, 197 Ill. 2d at 390 (citing *River Park*, 184 Ill. 2d at 303). The supreme court explained the difference between the case before it and *River Park*, relied upon by the defendant, a case in which the court had dismissed a case on *res judicata* grounds because the plaintiff had not first raised its state claims in its federal-court action:

> "In *this* case, plaintiff asserted his [state-law] contract tenure claim in the federal action, as required by the transactional test, only to have his claim dismissed by the district court 'for lack of jurisdiction' after an adverse decision on his ADA claim. Whether that dismissal was discretionary or otherwise is beside the point; it was a dismissal for lack of jurisdiction. There was no adjudication of the merits on *that* claim despite plaintiff's proper and timely assertion of the claim. With respect to that timely asserted claim, plaintiff did not get his day in court and, therefore, *res judicata* does not apply." (Emphases in original.) *Nowak*, 197 Ill. 2d at 392.

¶ 30    The supreme court also rejected the defendant's arguments that the plaintiff's claims arose from a single transaction and, therefore, the adjudication on the ADA claim constituted an adjudication of the state-law claim as well:

> "Although the claims in question may be initially regarded as a single cause of action for application of *res judicata*, subsequent events may alter their status. For example, *res judicata* does not apply to bar an independent claim of part of the same cause of action if the court in the first action expressly reserves the plaintiff's right to maintain the second action or the plaintiff is unable to obtain relief on his claim because of a restriction of the subject-matter jurisdiction of the court in the first action." *Nowak*, 197 Ill. 2d at 392-93 (citing *Airtite v. DPR Ltd. Partnership*, 265 Ill. App. 3d 214, 219 (1994), and Restatement (Second) of Judgments § 26(1) (1982)).

The court noted that "[t]he facts of the instant case place it squarely within the exceptions to the application of *res judicata* as set forth in the Restatement (Second) of Judgments § 26(1) (1982), and in *Airtite*, both of which were cited by this court in *River Park*," and found:

> "By declining jurisdiction over the plaintiff's pendent state claim, dismissing it for lack of jurisdiction, the district court in effect reserved plaintiff's right to pursue the matter in state court. The doctrine of *res judicata* need not be applied in a manner inconsistent with fundamental fairness. [Citations.] The doctrine does not apply in this case." *Nowak*, 197 Ill. 2d at 393-94.

¶ 31    In the case at bar, we are presented with the same factual scenario as was present in *Nowak*: plaintiff initially filed her state-law claim together with her federal claim in federal

- 8 -

court, but the district court declined jurisdiction over the state-law claim. Following our supreme court's instruction in *Nowak*, we cannot find that *res judicata* applies in this case.

¶ 32  The Park District attempts to distinguish *Nowak* by arguing that it does not address a situation in which the plaintiff *succeeds* in the federal case, as in the instant case, because the plaintiff in *Nowak* lost in his federal case. We do not find this argument persuasive. Our supreme court's analysis in *Nowak* did not depend in any way on whether the plaintiff's federal case was successful or unsuccessful. Instead, our supreme court focused on the fact that "[t]here was no adjudication of the merits on [the state-law] claim despite plaintiff's proper and timely assertion of the claim. With respect to that timely asserted claim, plaintiff did not get his day in court and, therefore, *res judicata* does not apply." *Nowak*, 197 Ill. 2d at 392. Despite the Park District's claims otherwise, *res judicata* was simply not a proper vehicle to dispose of plaintiff's retaliatory discharge claim and the circuit court erred in relying on it to grant the Park District's motion *in limine*.

¶ 33                                    II. Collateral Estoppel

¶ 34  Despite the fact that the circuit court's decision was based on *res judicata*, we must nevertheless consider whether collateral estoppel applies to bar plaintiff from seeking compensatory damages in her state-law case, since we may affirm the circuit court on any basis apparent from the record on appeal. *Alpha School Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 734 (2009); *Rodriguez v. Sheriff's Merit Comm'n*, 218 Ill. 2d 342, 357 (2006).

¶ 35  "The doctrine of collateral estoppel applies when a party, or someone in privity with a party, participates in two separate and consecutive cases arising on different causes of action and some controlling fact or question material to the determination of both causes has been adjudicated against that party in the former suit by a court of competent jurisdiction." *Nowak*, 197 Ill. 2d at 389-90. "The adjudication of the fact or question in the first cause will, if properly presented, be conclusive of the same question in the later suit, but the judgment in the first suit operates as an estoppel only as to the point or question actually litigated and determined and not as to other matters which *might* have been litigated and determined." (Emphasis in original.) *Nowak*, 197 Ill. 2d at 390. "[R]es judicata, while similar to collateral estoppel, deals with the same claim or *cause of action*, while collateral estoppel deals with identical *issues*." (Emphases in original.) *Illinois Health Maintenance Organization Guaranty Ass'n v. Department of Insurance*, 372 Ill. App. 3d 24, 41 (2007).

¶ 36  "[T]he minimum threshold requirements for the application of collateral estoppel are: (1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." *Gumma v. White*, 216 Ill. 2d 23, 38 (2005); *Hurlbert v. Charles*, 238 Ill. 2d 248, 255 (2010); *State Building Venture v. O'Donnell*, 239 Ill. 2d 151, 158 (2010). "Application of the doctrine of collateral estoppel must be narrowly tailored to fit the precise facts and issues that were clearly determined in the prior judgment." *Nowak*, 197 Ill. 2d at 390-91. Additionally, "[e]ven where the threshold elements of the doctrine are satisfied and an identical common issue is found to exist between a former and current lawsuit, collateral estoppel must not be applied to preclude parties from presenting their claims or defenses unless it is clear that no unfairness results to the party being estopped." *Talarico v. Dunlap*, 177 Ill. 2d 185, 191-92 (1997).

¶ 37    In the case at bar, our focus is on the first requirement, that of identity of issues. The "issue" at the heart of the parties' arguments is the issue of compensatory damages. The Park District argues, and the circuit court agreed, that the compensatory damages recovered in the federal case are identical to those plaintiff seeks in the state-law case. Plaintiff, however, argues that the issues are not identical because "(1) Plaintiff's intentional race discrimination claim and her retaliatory discharge claim are wholly separate claims, independent of one another, and with different proof required to prove the elements of the respective causes of action; and (2) the Seventh Circuit uses a standard for reviewing a jury's damage award that is significantly less deferential to the jury than the standard used by federal courts, further demonstrating that an identity of issues is not present." We do not find plaintiff's arguments persuasive.

¶ 38    While we agree with plaintiff that there are different requirements to prove race discrimination and retaliatory discharge, those differences have no bearing on the question of whether the damages recovered are identical in both cases, especially here, where both were based on the facts surrounding plaintiff's discharge. For that answer, we must consider what the federal jury was asked to decide and what plaintiff would be seeking in her state-law case.

¶ 39    The jury in the federal case was asked to determine whether plaintiff "prove[d] by a preponderance of the evidence that she was terminated by the Chicago Park District because of her race." The jury instruction concerning damages stated:

    "You may award compensatory damages only for injuries that Ms. Schandelmeier-Bartels has proved by a preponderance of the evidence were caused by the Chicago Park District's wrongful conduct.

    Your award must be based on evidence and not speculation or guesswork. This does not mean, however, that compensatory damages are restricted to the actual loss of money; they include both the mental and physical aspects of the injury, even if they are not easy to measure.

    In calculating damages, you should not consider the issue of lost wages and benefits. The court will calculate and determine any damages for past or future lost wages and benefits. You should consider the following type of compensatory damages, and no others:

        The mental and/or emotional pain that Ms. Schandelmeier-Bartels has experienced. No evidence of the dollar value of mental and/or emotional pain and suffering has been or needs to be introduced. There is no exact standard for setting the damages to be awarded on account of pain and suffering. You are to determine an amount that will fairly compensate Ms. Schandelmeier-Bartels for the injury, if any, that she sustained."

¶ 40    This language tracks the language of the Seventh Circuit pattern jury instruction for compensatory damages in Title VII cases in all but one respect. The pattern instruction provides that the jury "should consider the following types of compensatory damages, and no others":

    "[1. The physical [and mental/emotional] pain and suffering [and disability/loss of a normal life] that Plaintiff has experienced [and is reasonably certain to experience in the future]. No evidence of the dollar value of physical [or mental/emotional] pain

- 10 -

and suffering [or disability/loss of a normal life] has been or needs to be introduced. There is no exact standard for setting the damages to be awarded on account of pain and suffering. You are to determine an amount that will fairly compensate Plaintiff for the injury he has sustained.]" Federal Civil Jury Instructions of the Seventh Circuit, No. 3.10 (2005 rev.).

¶ 41　In her state-law retaliatory discharge case, the applicable pattern jury instructions for damages provide:

"If you decide for the plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate him for any of the following elements of damages proved by the evidence to have resulted from the [negligence] [wrongful conduct] [of the defendant], [taking into consideration (the nature, extent and duration of the injury) (and) (the aggravation of any pre-existing ailment or condition)].

[Here insert the elements of damages which have a basis in the evidence]

Whether any of these elements of damages has been proved by the evidence is for you to determine." Illinois Pattern Jury Instructions, Civil, No. 30.01 (2008).

One of the elements of damages that may be inserted into the damages instruction is:

"[Loss of a normal life experienced (and reasonably certain to be experienced in the future).]" Illinois Pattern Jury Instructions, Civil, No. 30.04.01 (2008).

"Loss of a normal life" is further defined:

"When I use the expression 'loss of a normal life', I mean the temporary or permanent diminished ability to enjoy life. This includes a person's inability to pursue the pleasurable aspects of life." Illinois Pattern Jury Instructions, Civil, No. 30.04.02 (2008).

Additionally, another element of damages that may be inserted into the damages instruction is:

"The emotional distress experienced [and reasonably certain to be experienced in the future]." Illinois Pattern Jury Instructions, Civil, No. 30.05.01 (2008).[5]

¶ 42　Plaintiff argues that the federal jury did not decide the issue of damages for a retaliatory discharge because "the instructions in the federal case make it abundantly clear that [the] jury was instructed to award damages for the emotional and mental pain plaintiff experienced as a result of being subjected to intentional race discrimination, and not for any retaliatory acts, or harm resulting from retaliatory acts." Plaintiff's argument might have some merit, if not for one fact: both the intentional racial discrimination and the retaliatory discharge arise from a single incident. Both of plaintiff's claims are centered on plaintiff's reporting of the alleged abuse to DCFS and her subsequent termination. As the circuit court noted, this is not a situation in which plaintiff alleged a long history of racial discrimination culminating in her discharge. In that kind of case, it is entirely possible that the damages for the plaintiff's emotional and mental pain could be different in each case. Here, however, we see no way that "emotional and mental pain from discharge due to racial discrimination" is different than

---

[5]There are other elements of damages that may be inserted into the damages instruction as applicable. See Illinois Pattern Jury Instructions, Civil, Nos. 30.04-30.20 (2008). However, the ones quoted above are the only ones the parties have cited as relevant to the instant case.

"emotional and mental pain from discharge due to reporting an abuse allegation to DCFS," and it is telling that plaintiff makes the statement that the damages are different, but can provide no examples of *how* they differ.

¶ 43    Moreover, plaintiff's claim that she is also seeking loss-of-normal-life damages in the state-law case does not change this result. Loss of a normal life usually depicts a physical or mental injury that causes a person the inability to pursue the pleasurable aspects of life. See Illinois Pattern Jury Instructions, Civil, No. 30.04.02 (2008). If the injury is a loss of a limb or an organ of the body, the result of that loss is the loss of a normal life. If the loss is a result of a mental injury or condition, that would have been covered by the instruction that was given in the federal case, and if it was not covered, the plaintiff could have requested that it be included in the damage instructions and failed to do so. See *Hendricks v. Riverway Harbor Service St. Louis, Inc.*, 314 Ill. App. 3d 800, 810 (2000) (finding that, under federal law, " 'disability/loss of enjoyment of life' is an item which may be considered as part of the element of pain and suffering, but it is not a separate and independent element of damages").

¶ 44    As quoted above, the Seventh Circuit pattern instructions show that plaintiff could also have asked for loss-of-normal-life damages to be specifically included in the federal case, but chose not to do so. The failure to request loss-of-normal-life damages does not render the damages nonidentical. The jury was asked to award plaintiff damages for the emotional and mental pain resulting from plaintiff's discharge, and those damages are identical to the damages plaintiff seeks in her state-law retaliatory discharge case. Accordingly, collateral estoppel prevents plaintiff from litigating the issue of damages in the state-law case. Furthermore, since plaintiff has already recovered in the federal case, she has already received all that she is entitled to receive for the mental and emotional pain resulting from her discharge. "Having once been awarded damages for the injuries by the court, she cannot seek compensation for those injuries again. That is so 'regardless of whether or not the plaintiff has recovered all that he or she might have recovered' in the initial proceeding." *Saichek v. Lupa*, 204 Ill. 2d 127, 140 (2003) (quoting *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 502 (2002)). Consequently, plaintiff has no damages to recover and, as the circuit court concluded, without damages, plaintiff can state no cause of action. Therefore, the circuit court properly entered judgment in the Park District's favor.

¶ 45    We are not persuaded by plaintiff's attempt to render the damages issues distinct by arguing that Illinois uses a more deferential standard of review in reviewing compensatory damages awards than does the federal court. In the federal case, the Seventh Circuit reduced plaintiff's compensatory damages award from $200,000 to $30,000. Plaintiff argues that such a result would be unlikely under Illinois law. However, plaintiff has cited no authority showing that a reviewing court's standard of review has any bearing on determining whether issues are identical for purposes of collateral estoppel. Indeed, we can see no relevance to such a consideration. It is the issue before the trier of fact that is the relevant consideration in determining whether collateral estoppel applies, and here, as noted, the issue before the trier of fact as to compensatory damages is identical.

¶ 46    As a final matter, we address plaintiff's argument that application of collateral estoppel in the instant case would be inconsistent with the right granted by section 13-217 of the Code of Civil Procedure (735 ILCS 5/13-217 (West 2008)) to refile an action that has been dismissed by a federal court for lack of jurisdiction, as well as the supreme court cases interpreting section 13-217. None of the three cases plaintiff cites supports her contention. It is true that

our supreme court has said that a plaintiff does not engage in claim-splitting when she refiles a case in state court that has been dismissed by the federal court for lack of jurisdiction. See *Rein*, 172 Ill. 2d at 341 (listing a restriction on the subject-matter jurisdiction of the court as a situation in which it would be inequitable to apply the rule against claim-splitting). Plaintiff was plainly not engaged in claim-splitting here–she attempted to file both claims in federal court, but was prevented from doing so by the district court declining jurisdiction.

¶ 47    Nevertheless, the right to refile her claim in state court does not immunize her from the application of the doctrine of collateral estoppel. Our supreme court, in the cases plaintiff cites in support of her argument, has made that clear. For instance, in both *Rein* and *Hudson*, our supreme court has stated that despite the fact that section 13-217 provided the plaintiffs in those cases the right to refile causes of action that they had voluntarily dismissed, the statute "should [not] be read to automatically immunize a plaintiff against the bar of *res judicata* or other legitimate defenses a defendant may assert in response to the refiling of voluntarily dismissed counts." *Rein*, 172 Ill. 2d at 342-43; see also *Hudson*, 228 Ill. 2d at 483 (noting that section 13-217's right to refile "refer[s] only to a plaintiff's rights *vis-à-vis* the limitations period, which is the only subject addressed by section 13-217").

¶ 48    Furthermore, in *Nowak*, a case, as noted, that deals with an identical factual scenario as in the case at bar, our supreme court engaged in a collateral estoppel analysis. The supreme court did not hold that a collateral estoppel analysis was not applicable because it would be inconsistent with the right granted by section 13-217, as plaintiff wishes us to do in the instant case. Instead, the *Nowak* court expressly determined that the defendant's collateral estoppel claim failed because the issues were not identical. *Nowak*, 197 Ill. 2d at 394.

¶ 49    In the instant case, plaintiff is prevented from pursuing her state-law claim because the issue of damages has already been decided by the federal jury. We are sympathetic to plaintiff's plight, and emphasize that she did nothing wrong by refiling her case in state court, but this does not permit us to allow plaintiff to seek damages that she has already recovered. Accordingly, we affirm the circuit court's judgment in favor of the Park District.

¶ 50                                                 CONCLUSION

¶ 51    The circuit court erred in finding plaintiff's state-law claim barred by *res judicata*. However, collateral estoppel prevents plaintiff from seeking compensatory damages in her state-law case where the identical damages have already been recovered in her federal case.

¶ 52    Affirmed.